JOHN W. SPACY

*v.*

BENJAMIN RITTER *et al.*

*Opinion filed February 21, 1905.*

1. DEEDS—*whether a deed was delivered is a question of fact.* Whether the grantor, in leaving a deed in the hands of a third person to be delivered to the grantee after his death, intended to part with all power of control over it and with all right to re-call it, is a question of fact, upon which the finding of the chancellor will not be disturbed by a court of review unless good reason for doing so is disclosed by the evidence.

2. SAME—*when intended disposition of property is ambulatory.* A deed intended by the grantor to be delivered to the grantee at the grantor's death in case the latter did not conclude to re-call it is a disposition of property which is ambulatory until the death of the grantor, and which can only be effected by an instrument in writing executed in conformity with the Statute of Wills.

APPEAL from the Circuit Court of Vermilion county; the Hon. JAMES W. CRAIG, Judge, presiding.

J. H. DYER, and J. B. MANN, for appellant.

SALMANS & BROWN, and REARICK & MEEKS, for appellees.

Mr. JUSTICE BOGGS delivered the opinion of the court:

This was a bill in chancery which, as amended, prayed for a decree canceling a deed of the north-west quarter and west half of the north-east quarter of section 35, town 22, north, range 11, west, alleged by the appellant to have been made to him by one Benjamin Ford, Sr., deceased, and for partition of these tracts, together with other lands of which said Benjamin Ford, Sr., died seized. A decree was entered canceling and vacating the deed held by the appellant, and making partition of the lands among the heirs of said Ford, deceased. From so much of the decree as affected the conveyance of the said tracts of land to him the appellant has

perfected this appeal, and the only question presented is as to the correctness of the decree in that respect.

The appellant was the son-in-law of the said Benjamin Ford, Sr. He received the deed purporting to convey the said lands to him from one W. Lee Bartlett, after the death of the alleged grantor. The contention of the appellant was that the grantor, a widower, during his lifetime, and on the 5th day of April, 1899, executed and acknowledged the deed and delivered it to said W. Lee Bartlett, with instructions to hold the deed as long as the grantor should live, and upon the death of the grantor to deliver the deed to the appellant. The deed recited that the consideration for the conveyance was the sum of $13,200 and "love and affection." The contention of the appellees was that the grantor did not either execute or deliver the deed, and that the grantee did not pay any part of the money consideration specified in the deed. The master in chancery to whom this branch of the cause was referred and before whom the witnesses appeared, found that the deed had been executed and delivered, but the chancellor sustained exceptions to the report, and found that it appeared from the evidence that the deed has neither been executed nor delivered by the grantor.

We have diligently read the evidence as preserved in the record, and also the arguments of counsel with reference to it. It was very clearly shown the appellant did not pay any portion of the sum of money mentioned in the deed as consideration for the conveyance. The testimony of the different witnesses touching the question of the making of the deed by the deceased grantor, and the delivery thereof, is in irreconcilable conflict. The record abounds in direct contradictions as to occurrences, which it is extremely difficult, if not impossible, to attribute to anything other than intentional false swearing. Proofs and counter-proofs as to statements made by important witnesses out of court, directly at variance with their sworn statements on material points, also crowd the pages of the record. Fifty-six witnesses testified

that the general reputation of the appellant for truthfulness and honesty was bad, while ninety-five witnesses testified that it was good. Eighteen witnesses testified that the general reputation of W. Lee Bartlett, the custodian of the alleged deed, was bad, and twenty-eight testified that his reputation was good. The discussion of the evidence in detail touching the genuineness of the instrument would be fruitless of benefit to any of the parties or to the profession, in view of the conclusion which we have reached that the finding of the chancellor that the deed, if executed by the alleged grantor, had not been delivered should not be disturbed. It was essential to the valid delivery of the deed that the grantor should have parted with control over the instrument and with all right to re-call it or to exercise power or dominion over it. (*Bryan* v. *Wash,* 2 Gilm. 557; *Stinson* v. *Anderson,* 96 Ill. 373; *Wilson* v. *Wilson,* 158. id. 567; *Provart* v. *Harris,* 150 id. 40; *Hawes* v. *Hawes,* 177 id. 409; 13 Cyc. 566.) The question is one of fact, only, and the finding of the chancellor thereon should not be disturbed unless a good reason for so doing is disclosed by the evidence. In *McCormick* v. *Miller,* 102 Ill. 208, we said (p. 214): "The finding of the lower court ought never to be disturbed upon a mere question of fact without some good reason for doing so is clearly apparent. If, upon a careful consideration of the whole of the testimony bearing on the question, the reviewing court has a well founded doubt as to how the question should have been determined, without any clear conviction the one way or the other, the finding of the court below should not be disturbed." The evidence preserved in this record is so conflicting, unsatisfactory and uncertain that there is no reason we should assume to overrule the conclusion and findings of the chancellor that the alleged grantor did not part with or intend to part with the right to re-call the deed and that there was no legal delivery thereof.

W. Lee Bartlett, who it is the contention of the appellant received the deed from the deceased grantor, was produced

as a witness in behalf of the appellant. He testified that he was a member of the bar of the State of Indiana and was post-master at Ambia, in that State, and that on April 5, 1899, Benjamin Ford, Sr., executed (by his mark) and acknowledged the deed in question in his presence. As to the delivery of the deed the witness, on his examination in chief, said: "I think I placed the deed on the table and went out into the post-office part of my office. Ford brought the deed to me after that,—I think the same day,—at the post-office. I was back of the boxes and he handed it through the wicket, —the delivery window. It is hard for me to tell just what conversation took place. My recollection is that he said, 'Here are some papers to take and take care of for me until I call for them, and here is that Spacy deed,' or something in substance to that effect, and if the deed was not called for to see that Spacy got the deed at his death, as the understanding was, or something to that amount. I don't know to give the exact facts or words in the matter. It is hard to tell just what was said. My recollection is that he said to take care of the papers and the deed and at his death to see that Spacy got the deed." In the further course of his testimony the witness said: "We had a fire, and soon after he (Ford) asked me where I kept this deed, and I told him I kept his papers in the back office but had taken them to the vault in the bank. He told me he didn't want me to lose any of his papers, especially that deed. He wanted me to see that Spacy got it when he died. The last time I saw him he said, 'I want you to take care of that deed and see that Spacy gets it at my death.'" On cross-examination the witness testified: "I don't know exactly that Ford said that if he didn't call for the deed it was to be delivered to John Spacy at his death. My understanding was, or best recollection was, that there were some papers,—he often came and put papers and gave me papers to take care of them until he wanted them. My recollection is he said: 'Here are some papers; take care of them and the Spacy deed.' And just what he said after that,

—I think he said one thing and sometimes I think he said another. My recollection is he said give them to Spacy,— to take care of and give to Spacy at his death." He was asked: "Didn't you say in your examination in chief what Ford told you on that occasion was, if he didn't call for the deed?" and said: "I might have meant the deed or paper, I forget. I don't know whether it was if it was to be called for. My best recollection is that I did not say that in my examination in chief. It is my understanding that Ford said if he didn't call for the deed I was to give it to Spacy at his death. My best remembrance is that after he left it to be delivered to Spacy at his death, then he meant me to keep it. My recollection is that he delivered the deed for Spacy—to be given to Spacy. All I can say, the best of my recollection is he said: 'Here are some papers; take care of them until they are called for. Here is the Spacy deed; if it isn't called for give it to Spacy at my death.'" The witness further testified that after the death of the alleged grantor in the deed he made a typewritten statement, signed the same and delivered it to the administrator of the grantor. This statement, so far as it relates to the delivery of the deed, is, as abstracted, as follows: "That he (Bartlett) signed Ford's name and made the mark at the latter's request, in the presence of his (the witness') wife, and gave the deed to Ford; and some time after that Ford came to the office with several papers, among which was this deed, and told him to keep the deed until he called for it, and if he never took it out, for him, Bartlett, to see that it was delivered to Spacy after his death; * * * that Ford had a private drawer in the office of Bartlett, where he left papers and took them out when he wanted them."

Jonathan Ervin testified to the effect that the grantor handed the deed to Bartlett with unconditional instructions to hold it until his (the grantor's) death and then to deliver it to the appellant. But it was testified that the appellant stated out of court that only himself, Mr. Bartlett and Bart-

lett's wife knew anything about the occurrences connected with the delivery of the deed, and other witnesses detailed statements which they testified that Jonathan Ervin made in their presence out of court, which were inconsistent with and at variance with his testimony on the point.

John Ervin and John Stevens testified they were in the post-office at Ambia and saw Benjamin Ford, Sr., hand some papers to Mr. Bartlett, and that Ford said, in substance, that a deed to appellant was among the papers, and that he (Bartlett) should hold the deed until his (Ford's) death and should then give it to the appellant. These witnesses were merely by-standers in the post-office, without any interest in the matter, and were mere casual hearers and onlookers. Bartlett was to act on the instructions or directions given by Ford, and the chancellor would very naturally conclude that Bartlett would be more likely to hear fully any qualifying statements of Ford than would Stevens and Ervin.

Bartlett was a member of the bar of the State of Indiana, but it is quite apparent that when he prepared the written statement for the administrator of Ford he did not know that if Ford reserved the right to re-call the deed and take it again from his possession the conveyance would be wanting in legal effect under the rule in Illinois, where the land was situated. He deliberately declared in the written statement which he himself wrote on the typewriter and signed, to quote his own words: "I gave him (Ford) the deed and he took it out, and some time after that,—could not say just how long,—he came in my office with several papers, among which was this deed. He told me to keep the deed until he called for it, and if he never took it out, for me to see that it was delivered to Spacy after his death."

It cannot be demonstrated from or by the record herein that the chancellor erred in concluding that the alleged grantor did not intend to divest himself of the right to re-take the deed into his own possession should he desire to do.

so; that it was, at most, only the intention of the grantor that the deed should become operative if he did not, during his lifetime, conclude to re-call it and make some other disposition of the property. Such an intended disposition of property is of a testamentary character, is ambulatory until the death of the grantor, and can only be effected by an instrument in writing executed in conformity with the statutory enactments regulating devises of real estate by wills. *Cline* v. *Jones,* 111 Ill. 563; *Hayes* v. *Boylan,* 141 id. 400.

The decree must be and is affirmed.

*Decree affirmed.*