FRANK KONSER

*v.*

JOHAN KONSER.

*Opinion filed February 21, 1906.*

DEEDS—*what evidence overcomes presumption of delivery of deed.* Evidence that a deed from the grantor to his son was intended to become effective after the grantor's death, and that the grantor recorded the deed but kept it in his possession and paid the taxes on the property; that he had no other property than that conveyed yet reserved no interest therein, and that he kept the deed until it was taken by the grantee in the grantor's absence and kept by him though the grantor demanded its return, overcomes the presumption of delivery of the deed arising from the fact that it was recorded and was in the possession of the grantee.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is an appeal from a decree of the superior court of Cook county setting aside and canceling a deed made by the appellee to appellant and declaring the same to be a cloud upon the title of appellee.

From the evidence it appears that appellee, who was the father of appellant, is a German and was about the age of fifty-five years at the time of the transaction, unable to read or speak the English language and uneducated in his own language, and by occupation a day laborer; that he had acquired title to eighty-two feet of land in the city of Blue Island, Illinois, and that upon forty-one feet thereof was a house occupied by himself and family as a homestead; that said real estate constituted his entire property, and that he had two children, appellant and an older daughter. Upon the marriage of the daughter he had deeded to her the unimproved half, or forty-one feet, of said real estate. Appellant lived with appellee at the time of making said deed, and later married and for a time continued to live at home. At about

the time of appellant's marriage a cottage was constructed on the rear of the premises in question, and when completed appellant moved into it, and he and appellee were living on the lot described in the deed, in their separate homes, at the time of commencing this suit. Appellee testified that after making the deed to his daughter, appellant was insistent that the balance of said premises be given to him, and finally he yielded to the importunities of appellant and called at the office of John L. Zacharias, a banker and notary public in Blue Island, for the purpose of having a deed drawn; that he was accompanied by appellant; that he instructed Zacharias to make out "papers" giving appellant said lot, but not until after his death; that he wanted appellant to have the lot when he and his wife were dead; that Zacharias drew the deed and instructed him not to deliver it to appellant or allow it out of his possession; that he kept it until the month of May, 1901, when appellant represented to him that unless the deed was recorded it would not be effective and he would get nothing on appellee's death; that appellant and his wife read the deed to him, and stated that he and his wife would have the use of the property for their lives even though the deed was recorded; that his son stated in the event the deed was not filed for record he would kill himself or go away and leave his wife and children for appellee to support; that finally appellee consented to have the deed recorded, and, accompanied by appellant, took the deed to a friend, one Beer, and requested him to take the deed to Chicago for the purpose of filing it for record; that when he delivered the deed to Beer he stated to him that his intention was, so long as he and his wife lived that the deed was not to be effective; that after the deed was recorded it was returned to him by Beer and he paid the recording fee; that he put it in the bureau drawer in his home; that the deed thereafter remained in his possession; that he often saw it in the drawer among his papers, and that the last time he saw it was just before going to Bernice after his first wife's death; that on his return he

missed the deed; that he accused his son of having the deed, and stated to appellant that he knew that Zacharias had instructed him not to give up possession of the deed, and that appellant replied that the deed was his,—that his name was on it. Appellee testified that he caused a house to be erected on the rear of the lot described in the deed, for which he paid, and which was occupied by appellant and family, and for which appellant paid rent until the death of appellee's first wife, at the rate of $8 per month; that the property covered by the deed constituted his entire estate; that he had paid the taxes thereon, except for the year just prior to the bringing of this suit, and at that time he was not at home and that appellant paid them; that he never delivered the deed to appellant or anyone for him, and that no consideration was paid to him by appellant for the lot.

Appellant contradicts appellee on every material statement. He testified he never asked appellee to make him a deed to the premises; that appellee suggested that they go to Zacharias and have the deed made; that as soon as the deed was signed it was delivered to him, and that he had it in his possession until the date of taking the same to Beer for the purpose of having it recorded; that appellee suggested that the deed be recorded; that he and appellee went to Beer's house for that purpose; that just before they reached the house he turned the deed over to appellee, and that after the deed had been recorded it was returned to the appellant by Beer and that he paid the recording fee; that he had had possession of the deed from that time until the trial; that he never paid appellee rent, and that he paid for the cottage erected on the rear of the lot; that appellee paid the taxes on the premises for the purpose of assisting him, and not under claim of ownership; that after the delivery of the deed to him appellee never claimed to own the lot, nor did he exercise dominion thereover; that appellee always stated he had no interest therein and that it was the property of the appellant.

Zacharias, the notary public who drew the deed, testified that appellee and his son called upon him, and that the appellee stated to him that he desired to have "papers" drawn so that appellant, after his death, would get all of his property; that he had already given to his daughter all that he believed she was entitled to; that he inquired if appellee desired to make a will, and that appellee stated that he wished the matter fixed by deed; that he said he understood that the house he lived in and the new house then being erected in the rear would be his so long as he lived; that witness then advised appellee that if he delivered the deed to appellant title would immediately vest, and that appellee should arrange with someone in whom he had confidence to keep the deed until after his death and then deliver it to appellee, or to be very careful not to deliver it to appellant; that the appellee stated, in reply to this advice: "All right, we will fix it that way; you make out the deed; Frank is a good boy and he and I will have no trouble."

Henry J. Beer testified that shortly prior to the date the deed was recorded, May 13, 1901, appellee and appellant called at his house, and that appellee stated to him that he would like to have him take a deed to Chicago and file the same for record, and, in substance, that he wanted his son to have the property after his death; that his daughter had already received all she was entitled to; that Frank was a good boy and he had given him that deed; that the appellee then had possession of the deed, and after the deed was recorded witness returned the deed to appellee and appellee paid the recording fee.

The contractor and sub-contractors who did the work on the cottage in the rear of appellee's homestead testified that appellee made the contract, and that appellee or his wife paid them for their work upon the cottage as it was in the course of construction.

Clara Nicht (now appellee's step-daughter) testified that she heard a conversation between appellee and the appellant

which took place shortly after appellee discovered that his deed was not in the bureau drawer; that appellee accused appellant of having taken the deed and demanded its return, and that appellant attempted to justify his conduct in taking the deed by claiming that he was the owner of the deed because his name appeared thereon; that appellee stated that he had been told he must keep the deed, and if he did not return the deed to him he would sue him, and appellant replied, "If you do, I will leave my wife and children with you and go away."

Three witnesses testified on behalf of appellant that they had heard appellee state that he had given the property to appellant. One of these witnesses, a saloon-keeper, testified that appellee, while drinking at his bar with appellant, stated that he now had everything fixed; that Bertha had her share and Frank (appellant) would get the rest of his property, and that appellant then showed him a warranty deed.

A number of receipts were introduced in evidence signed by the contractor and sub-contractors for work on the cottage, made out in appellant's name.

The testimony further shows that some time after the execution of this deed, appellee's wife, the mother of the appellant, died, and about four months subsequent to her death appellee re-married. Prior to his second marriage he went to Bernice and left his home in charge of appellant and his wife; that upon his return he brought with him a housekeeper, whom he afterwards married, and whose daughter is the witness Clara Nicht, above referred to. A few months after his second marriage appellee filed of record a declaration to the effect that the deed of record and in appellant's possession had not been delivered and was not intended to become effective until after appellee's death. Appellant then filed the original bill in this case seeking to have said declaration declared a cloud upon his title. Appellee appeared and answered, and filed a cross-bill asking to have said deed set aside and declared a cloud upon his title. The

master's findings were in favor of appellant but were over-ruled by the chancellor, and a decree granting the relief prayed for in the cross-bill was entered. The case has been brought here on appeal, for the purpose of reviewing the action of the trial court in entering such decree.

MASON & WYMAN, for appellant.

ANTON W. SCHROETER, and JOSEPH P. EAMES, for appellee.

Mr. JUSTICE HAND delivered the opinion of the court:

The decision of this case turns upon the question whether the deed from appellee to appellant was delivered, and the determination of that question necessitates an examination of the evidence for the purpose of ascertaining with what intention appellee made the deed.

The question of delivery, as between the parties to a deed, is one of intention. This court has frequently held that the recording of a deed is *prima facie* evidence of its delivery, (*Valter* v. *Blavka,* 195 Ill. 610,) and that although the recording of a deed of itself is not, in law, a delivery of it, yet where it appears that the grantee in the deed has knowledge of the recording of the deed and has assented thereto, and where a recorded deed is subsequently found in the possession of the grantee, such fact amounts to *prima facie* evidence of delivery. (*Shields* v. *Bush,* 189 Ill. 534.) However, the *prima facie* evidence of delivery made by proof of recording and possession of a deed by the grantee may be rebutted and overcome by testimony which establishes that the grantor in fact did not intend to deliver the deed and have it become at once effective as a conveyance. *Valter* v. *Blavka, supra; Union Mutual Ins. Co.* v. *Campbell,* 95 Ill. 267.

The circumstances surrounding this transaction from the date of the drawing of the deed until the commencement of

this suit are fully set forth in the statement of facts preceding this opinion and need not be reiterated at this time. From the evidence it seems clear that appellee, at the time of calling upon Zacharias, had in mind the disposition of his property after his death. He had heard of the costs of probating a will and desired to save costs, and asked that a deed be made. He was at that time advised as to the effect of delivery, and instructed to either retain possession of or deposit the deed with some friend in whom he had confidence, to be held until his death and then delivered, and he stated that he would follow such advice. Nothing said or done at the time of making the deed, as shown by the testimony of appellee and Zacharias, indicated any intention on the part of appellee to have the transfer become presently effective, but the clearly expressed intention of appellee was to so arrange his estate that appellant would get it all upon his death, he having already given his daughter all that he felt she was entitled to. The facts and circumstances do not corroborate appellant's statement that the deed was at once delivered to him, but preponderate in favor of the statement of appellee that he retained it in his possession from the time it was signed until he gave it to Beer to be taken to Chicago and filed for record. At the time appellee delivered the deed to Beer for the purpose of having it recorded he substantially reiterated the statement he had made to Zacharias as to his intention in making the deed.

As to the possession of the deed after it had been recorded, and thereafter, appellant is again contradicted by a disinterested witness, and appellee's statement of the fact is corroborated. Beer testifies positively that he returned the deed to appellee and that appellee paid him the recording fee, and that appellant was not present at the time he returned the deed to appellee. As appellant claims possession of the deed subsequent to its recording from its delivery to him by Beer, and nowhere claims to have received the deed from appellee or from any other source than from Beer, and

as Beer, a wholly disinterested witness, positively states he did not return the deed to appellant but did give it to the appellee, the evidence preponderates in favor of appellee's contention that the deed remained in his possession until he left his home; and strongly corroborating this proposition is the fact that immediately upon his return, when appellee discovered that the deed was not in his bureau drawer, he at once charged appellant with having abstracted it during his absence, and appellant made no denial, but attempted to justify by claiming the deed belonged to him. It is not denied, and is clearly established by the evidence, that the property described in the deed represented the entire estate of the appellee, and that it was occupied by himself and famly at the time of making the deed, as his home. Appellant testified that the deed was intended as a gift of said lot without reservation and intended to become at once effective, and it does not seem probable that appellee would give to this son, then a man of but twenty-three years of age, of no business experience and just starting out for himself in life, his entire estate without the reservation of a life estate or even an agreement as to support or occupancy during life, making it possible for appellant to dispossess him, as was attempted here, at any time; and these are facts that must be given due consideration in reaching a conclusion as to appellee's intention. *Wilenou* v. *Handlon,* 207 Ill. 104; *Dorman* v. *Dorman,* 187 id. 154.

We are of the opinion that the clear preponderance of the evidence is against appellant's contention, and that the intention of appellee was to dispose of his property so that his daughter should receive nothing more and that the title to this real estate would vest in appellant after his death. The deed was intended to operate as a will, and not as a deed, and, there being no question of estoppel here, would, as to appellant, be wholly inoperative. (*Wilenou* v. *Handlon, supra.*) The fact that appellee stated to different persons that he had made a deed to the lot to appellant is not

inconsistent with the view that he intended the deed to take effect only upon his death.

The decree of the superior court will therefore be affirmed.