**SNODGRASS et al. v. SNODGRASS et al.**

Nos. 12855 and 12857 Consolidated—Opinion Filed June 3, 1924.

Rehearing Denied Dec. 9, 1924.

(Syllabus.)

**1. Deeds—Delivery and Acceptance—Effect of Reserving Life Estate.**

If a grantor, in executing a deed in which he reserves a life estate, intends that then and there he vests in the grantee the present absolute ownership of said real estate, subject to such life estate, and by his acts does place it beyond his lawful power, in event of a change of mind or heart, to otherwise dispose of said real estate by will or deed or in other manner, then, through the acceptance by the grantee, there is a delivery of the deed by the grantor during his lifetime and title passes in the lifetime of the grantor to the grantee therein named and the deed is valid and may be enforced after the death of the grantor. Otherwise, and if the grantor merely intended that he should so part with such control at his death, the instrument is merely a will, regardless of its name, and is not valid or enforceable unless executed and attested in form and manner required by law relating to last wills and testaments. Such deed itself may be left by the grantor on deposit with a third person to hold until his death provided the aforesaid essential elements of delivery are established and acceptance by the grantee may be implied from the facts without an expressed acceptance being proven.

**2. Quieting Title—Parties Entitled to Sue —Executors and Devisees.**

Where the owner of real estate dies testate, the legatees and devisees named in the will who have a present or contingent interest in such real estate or in the proceeds of the sale thereof, and likewise the executor of such will, where the will directs the executor to sell the land and distribute the proceeds among the devisees and legatees, and each and all of them have such an equitable interest in such real estate as entitles them, under the law to maintain an action under section 466, Comp. Stats. 1921, to quiet title to said lands and those who refuse to join as plaintiffs should be made defendants in the suit.

Error from District Court, Kingfisher County: J. C. Robberts, Judge.

Action by H. C. Snodgrass and another against George L. Snodgrass and others. Judgment for defendants, and plaintiffs, bring error. Reversed and remanded, with instructions.

D. K. Cunningham, for plaintiffs in error.

W. J. Otjen and Geo. W. Buckner, for defendants in error.

LYDICK, J. This case involves the question of whether certain deeds were delivered by the grantor before his death. On April 23, 1912, John S. Snodgrass executed his will and testament and also then executed two warranty deeds by terms conveying unto each of two of his adult children, Minnie E. Pierce and Geo. L. Snodgrass, a separate tract of real estate, subject to a reservation of a life estate to himself. These he deposited with one J. Collins, who was an abstracter and a loan agent and not a lawyer, and who had drawn the papers for him. On May 22, 1915, the same grantor executed a similar deed to Rachel Rice, his adult daughter, conveying to her another tract of real estate and deposited same with the other papers with Mr. Collins. On December 1, 1917, John S. Snodgrass took up and destroyed the will he had formerly executed and thereupon executed another will which he left with Mr. Collins, who drew it for him. We do not know the contents of the first will, but the second will is in the record. Therein he directs his executor to sell all his real and personal property, but none of the same is therein described. He directs that from the proceeds thereof the executor pay a designated sum to each of the legatees therein named and divide the residue equally among them all. It is provided that there shall go "to Geo. L. Snodgrass a warranty deed to the northwest quarter of section 1, etc.," that being the land described in the deed to him left on deposit with Mr. Collins as heretofore stated. The legatees named consist of the three adult children above named, and of all the testator's other surviving children, among whom are H. C. Snodgrass and S. J. Turnbull, and consist, also, of all children of his deceased issue.

While these three deeds and this second and last will were on deposit with Mr. Collins, and in March 1919, the said John S. Snodgrass departed this life. Thereupon Mr. Collins delivered the will and the three deeds to the county judge of Kingfisher county. Prior to the institution of probate proceedings, the county judge, in the presence of all the legatees, delivered the three deeds to the three grantees therein named, and they recorded these deeds, took charge of the lands and asserted ownership thereof. Thereupon the will was admitted to probate and Carl J. Pierce was appointed executor thereof and the county court proceeded with the administration of the estate.

In the following January, H. C. Snodgrass and S. J. Turnbull, heirs at law of John S. Snodgrass legatees of specified sums named in his last will, and also residuary legatees therein filed an application in the county court of Kingfisher county for an

order directing the executor to seek to recover for the estate the three tracts of real estate claimed by the testator's three adult children under the aforesaid deeds. The executor and the other adverse claimants named demurred, and the county court held that it had no jurisdiction to so order, and this want of jurisdiction in the county court was affirmed by the district court on appeal.

Thereupon H. C. Snodgrass and S. J. Turnbull brought this suit in equity in the district court. They plead the facts as heretofore stated and allege that the executor refuses to bring this suit or to attempt to recover the three tracts of land conveyed as aforesaid. They allege that the three deeds were never lawfully delivered and are therefore void. They seek to cancel all three of these deeds and quiet the title of the heirs, devisees, and legatees to said land, and ask for an accounting for the rents and profits. This relief they seek for themselves and for the estate. They make the executor and all other heirs, devisees, and legatees defendants, as they could not join as plaintiffs.

After first requiring the plaintiffs to make a separate case against each of the three grantees, the issues were joined and the cases were again consolidated by agreement and so tried. The lower court made no separate findings of fact and conclusions of law in the form authorized by section 556, Comp. Stats. 1921, but found generally and specially against the plaintiffs and rendered judgment quieting the title of the three grantees named. The plaintiffs bring the case here on appeal, with case-made attached to their petition in error.

Mr. Collins was the only witness concerning the instructions and actions of the deceased relative to a delivery of the three deeds. On a trial, which it seems involved the same facts had in the county court, Mr. Collins testified that John S. Snodgrass had left the deeds and the will with him "simply for safe- keeping," and without instructions. However, in this trial the witness, in a very vague and highly unsatisfactory manner, seemed inclined to indicate that the deceased had given him instructions to deliver the deeds to the county judge with the will after the testator should pass away. He testified as follows:

"Q. Did he tell you to personally see that you delivered those deeds to Rachael Rice and Minnie E. Pierce and Geo. L. Snodgrass respectively? Answer that yes or no. A. He did not. He said I was to keep those with that. * * * Q. Now what instructions did he give you with regard to the Rachael Rice deed? A. I don't remember only that they were to go together. In fact, he would have made all the deeds for all his property if he had—if he had had his way about it, but some things prevented him from so doing, and the will was intended to cover all excepting what the deeds did convey and they were to go along with the will. That's all I remember about it."

This last statement is the mere expression of the opinion of the witness, and it is as incompetent and of as little value as is his testimony at another point where, when asked whether the deceased so deposited these deeds and wills with the witness that "he was at perfect liberty to come in or at least had the right to come in and take the envelope and open it or do what he saw fit," he answered: "He didn't do it. He had the privilege."

Frequently confronted on the witness stand with the variance between his testimony on the first hearing and in this trial, the witness each time asserted that his recollection was fresher and better in the first hearing, and as clearly each time indicated that his first testimony was the most reliable. In this we agree with the witness and will so hold. But under our theory of the law the result must be the same no matter which of these two stories we follow. According to the first story, deceased gave the witness no instructions, and under the other story he merely led the witness to believe that he intended the deeds to be delivered to the county court after his death, together with his will, for such action as the law provided.

The three grantees testified that they had never had any agreement with the grantor during his life concerning the execution of these deeds and knew nothing of their execution until the deeds were delivered to them in the county court. The witness Collins was not even acquainted with the grantees. There is no evidence that the grantor ever communicated to any one the fact that the deeds had been executed by him or that he even discussed the subject with any one whomsoever except Mr. Collins.

By each of these deeds the grantor sought to convey to each grantee a future estate, to commence in possession after the lapse of a designated time, to wit, the grantor's death, and this he had the right to do. See section 8407, Comp. Stats. 1921. If supported by proper considerations and delivered by the grantor, then the deeds became valid and enforceable upon such delivery. Man has the inalienable right to own and dispose of his property, but such right ends with death, and the right of a man to control the disposition and dis-

tribution of his property after his death and the right to inherit the property of another are dependent for their existence upon the statutes of the state. A deed, to become effective, must be delivered by the grantor during his lifetime, for if same be executed only for delivery after the grantor's death, the same is only a will regardless of its name and is valid only when executed in the form and manner provided by law for the execution of a last will and testament. To constitute such a delivery, however, the deed need not have been delivered into the physical hands of the grantee.

In the case of Shaffer v. Smith et al., 53 Okla. 352, 156 Pac. 1188, we said in paragraph 1 of the syllabus:

"Where the owner of land executes an instrument, attested as a deed, and in all respects in the form of a deed, and places it beyond recall in the hands of a third person, to be delivered to his daughters at his death, it should be treated by the court as a conveyance passing title in praesenti, with the right to possession postponed until the death of the grantor."

In Johnson et al. v. Craig et al., 37 Okla. 378, 130 Pac. 581, we said in paragraph 1 of the syllabus:

"Where there is a question as to whether there had been a delivery of a deed of conveyance, the real test is the intention of the grantor, which intention may be manifested by mere acts or by words or both combined, and such acts and words and the circumstances relevant thereto are susceptible of parol proof."

The Supreme Court of Indiana, in the case of Anderson v. Anderson et al., 24 N. E. 1036, said:

"While it is not indispensable that there should have been an actual, manual transfer of the instrument from the maker to the payee, yet to constitute a delivery it must appear that the maker in some way evinced an intention to make it an enforceable obligation against himself, according to its terms, by surrendering control over it, and intentionally placing it under the power of the payee, or of some third person for his use. The acts which consummate the delivery of a promissory note are not essentially different from those required to complete the execution of a deed."

If a grantor, in executing a deed in which he reserves a life estate, intends that then and there he vests in the grantee the present absolute ownership of said real estate, subject to such life estate, and by his acts does place it beyond his lawful power, in event of a change of mind or heart, to otherwise dispose of said real estate by deed or

will or in other manner, then, through the acceptance by the grantee, there is a delivery of the deed by the grantor during his lifetime and title passes in the lifetime of the grantor to the grantee therein named, and the deed is valid and may be enforced after the grantor's death. In such case the deed takes effect at the time of such delivery, and immediately thereupon, and while the grantor is yet living. the grantee could sell to another and convey good title to said real estate, subject to the life estate therein reserved. The mere handing of the deed to the grantee is not conclusive evidence of an intended delivery, and neither is the fact that the deed is retained in the possession of the grantor conclusive proof that no delivery was made, although in each instance the facts stated would be strongly persuasive.

In Benner v. Bailey et al., 84 N. E. 638, the Supreme Court of Illinois said:

"A deed must take effect upon its execution and delivery, or not at all and a deed which is not to take effect until the death of the grantor is void as an attempt to make a testamentary disposition of property without complying with the statute of wills.

"If the intended disposition of property is not to take effect in the testator's lifetime, but is ambulatory until his death, such disposition is not operative, unless it is executed in conformity with the statute of wills."

In the case of O'Brien v. O'Brien, 19 N. D. 713, the court had under consideration a case very similar to the one at bar. The opinion is lengthy, argumentative, and well written, and the analysis made by the court of the questions of law involved here meets with our approval. The court there quotes with approval from 9 Amer. & Eng. Encyc. of Law (2nd Ed.) page 157, where it is said:

"A grantor may deliver a deed to a third person to hold until after the grantor's death, and then deliver it to the grantee. Such a delivery is perfectly valid, but the deed must be left with the depositary without a reservation by the grantor, expressed or implied, of the right to retake it, or otherwise control its use."

In the body of the opinion the court says:

"But if the intent to deliver absolutely is not shown, or if such intent remains in doubt. subsequent acts or conduct of the parties are admissible to show what the intent actually was at the time that the delivery to the depositary was made."

In the case of Ackman et al. v. Potter, 88

N. E. 231, the Supreme Court of Illinois said in the syllabus of the case:

"The law makes stronger presumptions in favor of the delivery of a deed in the case of voluntary settlements than in an ordinary case of bargain and sale; but, if the grantees are of age, the presumption of delivery in their favor does not obtain to the extent that it would if they were minors."

In the case of Dunbar et al. v. Meadows, 176 S. W. 1167, the Court of Appeals of Kentucky said in the syllabus:

"While the question of delivery of a deed is generally one of intention of the parties, there must be some act or declaration from which an intention to deliver may be inferred, and of such a character as to deprive the grantor of possession and control of the deed."

The books are filled with cases on the legal questions here involved, and upon the pure questions of law they present a unanimity of opinion such as is rarely found. To be effective after the grantor's death, the deed must have been executed by the grantor in the form and manner required by law for the execution of deeds, and in the lifetime of the grantor he, the said grantor, must have caused such deed and the title to such real estate to have passed completely beyond his power and control and have caused the title to same to pass into the control of the grantee, although the document itself may have been reposed in the hands of some third party and a life estate reserved to the grantor. As was said in the case of O'Brien v. O'Brien, supra, so we say here: "The legal principles involved here are not in dispute. It is as to the application of these principles to the facts, and the conclusion to be deduced from the facts that there is an irreconcilable conflict between the parties"; and this may be equally said of the hundreds of varying and conflicting opinions of courts of last resort in the United States upon quite similar primary facts.

In 18 C. J, 440, notes 83, 84, and in the briefs of the parties, are cited numerous conflicting decisions of various courts where, upon facts rather similar to those in the case at bar, the courts have reached contrary conclusions. Aside from cases already quoted in this opinion, we have considered with favor the reasoning of the courts in the following cases: Maxwell v. Maxwell (Ark.) 136 S. W. 172; Fisher v. Oliver (Cal.) 164 Pac. 800; Moore v. Trott (Cal.) 104 Pac. 578; and again reported in 122 Pac. 462; Konser v. Konser (Ill.) 76 N. E. 846; Spacey v. Ritter, 214 Ill. 266; Parrott et al. v. Avery (Mass.) 35 N. E. 94.

Uniformity in the interpretation of law is essential to the equal protection of law, and so it may be said of the deduction of ultimate facts and conclusions from given primary facts. However, the one may be accomplished more easily than the other. The interpretation of a law by another court is strong evidence of the true meaning of the law and is valuable, and to a degree often binding, as a precedent for our guidance. Where, from given primary facts, different conclusions of ultimate facts can be reasonably reached, the ultimate conclusion of facts made by another court may be highly persuasive, but is no more binding on this court than is the verdict of one jury binding upon another jury similarly situated. We may be bound to declare the law as it has been declared by others, but we must declare the ultimate facts to be as they appear to us. Upon the conscience of the lawmakers we may place responsibility for the law, but the conscience of no tribunal but our own must answer for the conclusion of ultimate facts at which we arrive. From the given primary facts in this case, we must make that deduction and draw that conclusion which harmonizes with our own intelligence gained from our own study, observations, experiences, and knowledge of the ways and habits of men. While we have here written at length of the decisions of other courts upon the law, we feel it would serve no useful purpose to attempt an analysis of the conflicting processes of reasoning of the various courts upon reaching the ultimate conclusions of fact to be made from the primary facts submitted by the record to the court.

In his will the testator makes no reference to the deeds or the land he had deeded to the other grantees, Minnie E. Pierce and Rachael Rice. Now, this will was executed years after the deeds were executed. If the testator in the will referred to the deed he had already executed to George L. Snodgrass, then the fact that he did not refer to the other two deeds is argumentative that he did not want them delivered. If the testator, in writing his last will, had in mind that the executor would execute a new deed to George L. Snodgrass, then this is argumentative that he desired none of these deeds to be delivered unless prior to his death he had himself delivered them. The fact that he thought it necessary to provide in his will for the disposition of one of these three tracts of real estate would tend

to indicate that he did not consider he had delivered this deed during his lifetime, and as the testimony is the same as to this one deed as it is to the others, then it would indicate that the testator did not think he had delivered either of the three deeds. In his relations with the witness Collins. John S. Snodgrass said of these deeds and concerning them he did only that which he said and did concerning his will, and he asked that there be done with the deeds only that which he asked be done with his will. He realized he could change his will when he pleased. and it is reasonable to suppose that his attitude was the same toward the one as toward the others. Years later he did call for and destroy the will with which the deeds were originally deposited and thereupon executed another will, but the deeds remained unchanged.

The question we have to decide is not whether he did change the deeds, but whether in his lifetime there remained in him the power to change them. We see no logic in the statement that his failure to take up or change the deeds is evidence that he intended to part with control of the deeds when he left them on deposit with Mr. Collins. Had these deeds been delivered to the grantees when executed, or had it been made clear to them at that time that these tracts of real estate did at the time of the execution of such deeds then become their very own to be by them owned, subject only to the life estate therein reserved, why these grantees could then and at all times thereafter have sold, mortgaged, and, otherwise disposed of all of these lands during the lifetime of the grantor. All this, of course, the grantor knew. Likewise, if the deeds had been delivered, then if, during the years that intervened between the execution of the deeds and the grantor's death, one of the grantees should have died, the grantor could not have changed the deed and the title to the land would have passed into the probate proceeding of a county court, a course apparently not to the liking of the grantor. Suppose he had been offered a highly attractive price for this land. In such events would the grantor have felt he could change his deed or sell to another? Had one of the grantees become unfriendly to him or during that time have acquired much wealth and the other natural objects of his affection and bounty have become more needy, would the grantor have felt he could change these deeds? Why is it that during the grantor's life none of the grantees were permitted to know or even believe that such deeds had been executed? Is that consistent with the

theory that he intended to part with control over them? As a life estate was reserved in the deeds themselves, the grantor would have been amply protected had the deeds been delivered to the grantees themselves or even placed of record. He may have feared a wrongful and unauthorized delivery of these deeds or may have contemplated that he himself would deliver them at some later date and, therefore, had desired the reservation of a life estate therein for his protection. and at the same time realized that such reservation would do no harm if the deeds were delivered only after his death. However, if this fact argues in favor of a delivery, it is more than overcome by the other circumstances in the case.

Had the grantor, when he executed these deeds, in fact intended to reserve control over them in order to properly meet unforeseen contingencies and in order to make certain that the land should be an unincumbered part of his estate when he should die, and had merely desired that the deeds, if unchanged by him during his life, should merely have testamentary effect upon his death, what thing different would he have done than what he did do in this case? Echo's response is the only answer. Had he otherwise intended, a course different at every turn is easily presented. Presumptions and burden of proof are worthy of little consideration here, because from all the evidence the ultimate conclusion, to our minds and conscience, is irresistible that these deeds never passed beyond the grantor's control during his lifetime and were never delivered and were not effective while the grantor lived. As they were not executed and attested in the form required of testamentary documents. we hold them to be wholly void.

Under a contrary theory, a man could from time to time execute deeds, mortgages, bills of sale, and assignments of choses in action, conveying all of his property to others who could not learn thereof, deposit same with some third person who did not know of their contents, destroy and change them and convey the property to others from time to time in a similar method. and all of this he could do in such a manner as to leave the grantees therein named powerless to prevent the changes from being made in such conveyances. Thereby, in fact, though not in the idle contrary theory suggested. he would retain absolute control over the documents and the title to the property itself as long as he lived, and dying. he would evade the inheritance tax, defeat the creditors of this estate, and deprive the pro-

bate courts of all jurisdiction over his estate whenever he should die. Thereby a man's heirs at law and the natural objects of his love and affection would be deprived of the safeguards placed by statute about the execution of a testamentary document which changes the course of descent and distribution by the lawmakers declared to be the natural one. Unless we are correct in our conclusions, then the statutes of the state specifying the form and manner for the execution and attestation of testamentary documents had about as well be repealed. The intent of the deceased, no matter how clearly it may be proven, cannot control the disposition of his property at his death, unless it be evidenced by written instrument executed and attested as required by statute. If this be bad law, the appeal is to the lawmakers and not to us.

The grantees induced the county court to hold it to be without jurisdiction to direct the executor to bring this suit and in their briefs here they say the executor could not maintain it if he wanted to do so. They here urge that the devisees and legatees have no legal right to maintain such a suit, but must resort back to the administration proceedings in the county court for relief although only the district court has power to cancel deeds and quiet title. They plead, however, that the former judgment of the county court closes the doors of that court to the devisees and legatees. Nevertheless these grantees in the lower court themselves affirmatively invoked the jurisdiction of that court in this case by seeking and obtaining the affirmative judgment of the lower court in this suit quieting their title to these lands. Their own cross-petition, for that is what it is regardless of the name the pleaders gave it, is sufficient to give the district court jurisdiction to try and determine this case. Such an illogical shifting of positions is more confusing than commendable.

In Wilson v. Bombeck, 38 Okla. 498, 134 Pac. 382, we held:

"In this state the plaintiff in such an action is not required to have the legal title, or all the title, or a title paramount to the title of all others, in order to enable him to recover. It is only necessary that he shall have some kind of an estate in the property in controversy, legal or equitable, and that his title to the property shall be paramount to that of the defendant. Actions of this class are equitable in their nature, and the rights of the parties must be governed by the rules pertaining to suits in equity."

Under our law the title to real estate descends directly to the devisees, subject to the rights of administration of the estate given over by the will and by law unto the executor. In this case the testator directs that all of his real estate be sold and the proceeds divided by giving stated amounts to each legatee and that the residue shall be equally divided among all the legatees. In just such a case the Supreme Court of Kentucky, in the early case of Reynolds, Ex'r, v. Boyd, 92 Ky. 249, held that neither legal nor equitable title was vested in the executor and that an action like this should be maintained by the legatees and devisees. But that court held that, where the land was devised to the executor with directions to sell and distribute the proceeds, the executor was the proper party to bring such an action. Numerous cases may be found cited in Notes to 1913 Ann. Cas. (vol. 26) at page 998, holding the right to maintain such an action to be vested solely in the heirs. Many of these decisions turn upon statutes so dissimilar to ours as to make the cases of little value as precedents here.

California has practically the same statutes as our section 466, supra, and in the case of Pennie v. Hildreth, 81 Cal. 127, 22 Pac. 398, said:

"An administrator has an interest in the decedent's real estate, within the meaning of this statute, and if another is asserting a claim adverse to such interest, he may maintain the action."

Again, in the case of Collins v. O'Laverty, 136 Cal. 31, 68 Pac. 327, the Supreme Court of California followed this rule and said that to deny the executor and administrator the remedy provided by this section of the statute would be, in effect, to deny them the right to effectively do the things required of them by the statutes in the proper administration of the estate. The law was so interpreted by the court in Laverty v. Sexton, 41 Iowa, 435.

In section 1198, Comp. Stat. 1921, it is provided that an action for the recovery of real property or possession thereof may be maintained by and against executors and administrators wherever same might have been maintained by or against the respective testators and intestates. Under a similar statute it was held in Blakemore v. Roberts, 12 N. D. 394, 96 N. W. 1029, that executors and administrators could maintain an action like the one at bar.

In section 1197, Comp. Stat. 1921, it is provided that for the purpose of bringing suits to quiet title the possession of the

executors and administrators should be considered the possession of the heirs and devisees.

We, therefore, conclude that in the case at bar, where the executor is directed to sell the lands belonging to the estate and distribute the proceeds among the legatees and devisees, and where the legatees and devises. therefore, by operation of law and of the will admitted to probate in the case, are the ultimate beneficiaries of the proceeds of the sale of the real estate, both the executor and the devisees and legatees named in' the will have such an equitable interest in the lands belonging to the estate as entitles them to bring an action under section 466, Comp. Stat. 1921. In section 218, Comp. Stat. 1921, it is provided that all persons having an interest in the subject of the action or the relief demanded may be joined as plaintiffs. and by section 220, Comp. Stats. 1921, it is provided that if the consent of one who should have been joined as plaintiff cannot be obtained, he may be made a defendant in the action. By section 219, Comp. Stats. 1921, it is provided that any person may be made a defendant who claims an interest adverse to the plaintiff, or who is a necessary party to a complete determination of the question involved.

It is, therefore, our opinion that any devisee or legatee named in this will or the executor of the will had the lawful authority and .capacity to bring this suit and that he should join all such others with him as plaintiffs or make defendants in the action those who decline to join as plaintiffs. That is what was done in this case and we, therefore, hold the action was lawfully and properly instituted by the plaintiffs.

It is urged by the defendants in error here that the admission of the will to probate in the county court is a bar to the right of the plaintiffs to recover in this action. In admitting the will to probate the county court did not interpret its provisions or adjudge what distribution should be made thereunder. This remains yet to be done by the county court. In this case it cannot be said to bar the right of the parties to have this court determine the issues here presented. The failure of the plaintiffs to object when the county judge handed these deeds to the grantees does not estop them to object now, for the grantees parted with no consideration in reliance upon their acquiscence, and the plaintiffs were under no duty then to speak.

It is urged specially by Geo. L. Snod-grass, defendant herein and grantee in one of the deeds considered, that by the will admitted to probate the land conveyed by and included in the deed of the testator unto him is devised unto him. It is urged by the plaintiffs that the will does not make a devise of this land to Geo. L. Snodgrass, but merely directs that a warranty deed to this land be delivered to Geo. L. Snodgrass. It is urged that from the will it cannot be said that the deed on deposit with the witness Collins was the deed intended by the will and that the testator, by will, might have intended to require the executor him-self to make such a deed. It is urged that the will cannot rest partly on parol testimony, and for these and other reasons· it is urged that the same is ineffective as a devise of this land to Geo. L. Snodgrass.

The interpretation of this will and the distribution to be made thereunder rests originally with the county court. See Huger Toland v. Mary J. Earl, 129 Cal. 148. 61 Pac. 914. We think sufficient facts are not presented here to justify the district court as a court of equity to undertake in this case to interpret the will on this point.

It appears that many contests have been had between the parties in the county court and in the district court involving the material issues presented here and all interested parties have testified fully. The witness Collins is the only one who knows much of the material facts upon which our decision is made to rest. Three cases are here consolidated and the litigation has been long, drawn out and should be brought to an end. We see no useful purpose to be served by a new trial.

Judgment of the lower court is, therefore, reversed, and the cause is remanded to the district court, with instructions and directions to set aside the decree rendered in each of these three consolidated cases and to render judgment for the plaintiffs herein by the terms of which each of the three deeds involved in this action shall be canceled, set aside, and held for naught, but without prejudice to considering the Geo. L. Snodgrass deed in determining what passed under the will, and by the terms of which it shall be adjudged that John S. Snodgrass was the owner of all the lands described in said deeds at the time of his death and that none of the grantees therein named then had or now have any right, title, or interest in and to said lands, except as they may obtain the same as heirs, devisees, or legatees of John S. Snodgrass, deceased; and by the terms of which judg-

ment we here direct it shall be held that the grantees named in such deeds shall, in the proper court and in a proper action account for their use and occupancy of said lands after the death of said testator; except, and it is especially provided, however, that Geo. L. Snodgrass shall not be barred from his right to have the county court of Kingfisher county determine, without prejudice by the decision of this court in the case whether. under the last will and testament of John S. Snodgrass, there is devised unto him the lands therein specifically described. Its judgment thereon will be subject to review on appeal as provided by law.

NICHOLSON, BRANSON, HARRISON, WARREN. and GORDON, JJ., concur. McNEILL, J., dissents.