# THOMAS v. DANCER et al.
## No. 35146.

Supreme Court of Oklahoma.
Dec. 15, 1953.

Lon Kile, Hugo, for plaintiff in error.

Geo. T. Arnett and Ed. R. LeForce, Idabel, for defendants in error.

WILLIAMS, Justice.

Parties are referred to herein as in the trial court.

This action was brought by Lula Thomas, administratrix of the estate of D. G. Thomas, deceased, as such administratrix and as surviving widow of the deceased, for the cancellation of certain deeds, and to have a certain ante-nuptial contract declared void. The facts giving rise to this action are as follows:

Deceased had adult children by a previous mariage at the time he began paying court to plaintiff herein. On April 2, 1938, deceased executed 4 deeds by the terms of which he conveyed certain described lands to three of his children and to the children of a deceased daughter. The deeds were prepared by a Mr. Moran, a long-time friend and business advisor of deceased. Mr. Moran was a notary public, minister and former bank official, and was reputed to be a justice of the peace, though this was not true. He was not a lawyer. The deeds contained provisions to the effect that they were not to become effective till after the death of grantor; in all other respects they were ordinary warranty deeds. They were left in the possession of Mr. Moran.

On April 16, 1938, deceased executed a will, which was also prepared by and left with Mr. Moran, and which will be referred to later.

On June 7, 1938, plaintiff and deceased executed an ante-nuptial contract prepared by Mr. Moran, providing generally that in the event of the death of either of them, the survivor would not claim any interest in the separate property of such deceased one, and containing the following paragraphs, among others, which are pertinent in this action:

"4. In the event of the death of either party hereto after marriage, it is agreed that the survivor shall not claim any interest in the property or estate of the other, but that such property or estate shall descend to and vest in the heirs of the deceased person, without any interest therein accruing to the surviving spouse. The parties hereto intend by this instrument to effectually and permanently settle any property rights which may accrue to them or either of them by reason of the marital relationship which they intend to assume."

"6. Any property acquired subsequent to marriage, independent of what either party now owns, shall be jointly owned."

Shortly after execution of this contract, deceased and plaintiff were married. The officiating minister was Mr. Moran.

On October 4, 1946, deceased executed 2 deeds conveying to two of his children certain described lands which had been acquired after marriage; these deeds contained the same provision that they were to become effective only at the death of the grantor; Mr. Moran was again the scrivener and the deeds were left in his possession.

Thereafter, Mr. Thomas died, and plaintiff herein was appointed administratrix with the will annexed of the estate of D. C. Thomas, deceased. At approximately the same time (after the death of Mr. Thomas) Mr. Moran delivered all deeds mentioned above to the respective grantees, and they were filed for record. However, Mrs. Thomas apparently took possession of all of the real estate as administratrix except a farm which had been rented prior to her appointment and retained possession of a portion thereof until the date of the trial.

Defendants' answer and cross-petition admitted the execution of the deeds, will and ante-nuptial contract referred to, but denied the existence of grounds for cancellation of the deeds and avoidance of the contract, and asked that plaintiff be required to account for the rents received from the lands in her possession, and that their titles be quieted.

The trial court found for defendants, and plaintiff has appealed.

For cancellation of the deeds, plaintiff urges that there was never any delivery and the transfer of title was therefore never completed; that the deeds are testamentary in character and, not having been signed in the presence of two witnesses, are void as wills, and therefore void for any purpose.

■ It is well settled in this state that the owner of land may pass title to the same by executing a deed which is delivered to a third person (not the grantee) with the intention on the part of the grantor of placing such deed "beyond recall" or beyond his own control when he delivers it to such third person. See Wright v. Anstine, 96 Okl. 162, 220 P. 928, and Kay v. Walling, 98 Okl. 258, 225 P. 384. The question in the instant case, then, is whether the deceased intended to place the deeds "beyond recall".

■ The principal witness on this question in the court below was Mr. Moran. At all times heretofore mentioned, Mr. and Mrs. Thomas and Mr. Moran were all elderly people, and at the time of trial Mr. Moran was 82 years of age. A careful examination of his testimony reveals that he had been deceased's business advisor and personal friend for 30 or 40 years; that he helped in many of his business transactions; that he customarily kept various business papers and instruments of deceased, who was an uneducated man. It may fairly be inferred from such testimony that he was merely acting as a depository in retaining such instruments in his possession. At one point he testified as follows with reference to instructions by Mr. Thomas concerning the deeds in question:

"Q. He did not tell you that he wanted you to keep those and never give them back to him did he? A. No.

"Q. He did not tell you that he was giving these deeds to you and when he gave them he revoked the right forever to ask for one of them back did he? A. I don't think so."

He also testified as follows without objection:

"He never said anything to me about it. He never gave me any instruction about these things so far as delivering the deeds in case one died or anything. I felt like I would have to give them to him if he had asked for them but he never gave me any instruction, only you hold the deeds until one or the other passed away and they had to probate the will. ' * * *"

On cross-examination he testified:

"Q. When he delivered those deeds to you what did he tell you if anything to do with them? A. Just left them for safe-keeping is all I can say."

We think that under the clear weight of the evidence herein, it was shown that Mr. Thomas gave the deeds to Mr. Moran intending that he (Mr. Moran) should deliver them to the named grantees at the death of Thomas, but that Mr. Thomas did not intend to part with the deeds in such a way as to place them beyond his control. This conclusion is supported by the following facts which appear from the record: the deeds themselves recite that they are to become effective after the death of grantor; in his will, Thomas devised the lands to those named in the deeds, tending to indicate that he himself might have thought title had not passed when the deeds were executed; none of the grantees knew of the existence of the deeds till after the death of the grantor; Thomas paid the taxes on the land concerned till the date of his death; he delivered the deeds to a third party instead of to the grantees, which would indicate that he did not want the grantees to exercise any kind of dominion over the lands involved till after his death.

We therefore hold that all 6 deeds are void for want of delivery. See Snodgrass v. Snodgrass, 107 Okl. 140, 231 P. 237, 52 A.L.R. 1213.

■■ Plaintiff's remaining propositions of error concern the validity and construction of the ante-nuptial contract.

On this point, plaintiff testified that she did not read the contract before she signed it; that she signed a blank page and Mr. Moran thereafter wrote in the contract; that when he wrote it he included provisions which she and her husband had not instructed him to include; that when she thereafter called this to her husband's attention they mutually agreed to abandon the contract and reaffirm an earlier alleged oral contract. We have examined the record carefully and find that the testimony of Mr. Moran concerning the execution of the contract was squarely in conflict with that of Mrs. Thomas. We cannot say that the judgment of the trial court in this connection was against the clear weight of the evidence. In addition, we note that under the terms of 12 O.S.1951 § 384, the so-called "dead-man" statute, Mrs. Thomas was an incompetent witness on all matters concerning the alleged oral contract, as noted by the trial court in his conclusions of law.

■■ Plaintiff next argues that in the event that this court holds that the contract was not revoked by a subsequent oral agreement, it should be cancelled for the reason that it is grossly inadequate in its provisions for the wife to the extent that a presumption of fraud, duress or undue influence arises. In support of this argument, plaintiff says that defendants are contending that by the terms of the last sentence of paragraph 4 of the contract, above quoted, because of the use of the phrase "property rights which may accrue * * * by reason of the marital relationship", plaintiff has released any claim she might have had to any land acquired either before or after the marriage.

It is evident from the findings of fact and conclusions of law that the trial court considered the contract valid, but we cannot agree with the construction placed upon it. It was interpreted to mean that Mrs. Thomas had released any claim she might have had to any property acquired after marriage which was held in the name of the deceased.

It is apparent that the last sentence of paragraph 4 is a mere recital of the intention of the parties, and when such sentence is disregarded there is no uncertainty or ambiguity whatsoever as to the meaning, the operative clauses themselves being clear. Under such circumstances, the following rule from 17 C.J.S., Contracts, § 314, applies:

"As a general rule, recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous; but they may be looked to in determining the proper construction of the contract and the parties' intention."

The operative clause of paragraph 4 contains the ordinary and usual provision of ante-nuptial contracts to the effect that neither party would claim any interest in the separate property of the other.

Further, in paragraph 1 of the agreement, the parties recite,

"1. Each of the parties hereto are now single and contemplate marriage, and enter into this agreement for the purpose of permanently settling and disposing of all property rights of both parties hereto."

and in paragraph 2 thereof, further recite,

"2. First Party hereby agrees with Second Party that he will never claim from her or her estate in the event of her death prior to his death, any part of the property *now owned* by her. Second Party on her part agrees with First Party, that she will never claim any part of this estate *now owned* by him in the event of his death prior to her death." (Emphasis supplied.)

From a consideration of the whole agreement, we conclude it to have been the intention of the contracting parties that the survivor would be precluded from claiming an inherited interest in only that portion of the estate of the deceased spouse acquired prior to the marriage, or traceable thereto.

■ Paragraph 6 is an agreement that all property acquired after the marriage, independently of what each then owned, would be "jointly owned". It appears from the record that the scrivener, who was not a lawyer, made the choice of words, and since no special or technical meaning is contended for, the words "jointly owned" will be taken in their ordinary sense, pursuant to 15 O.S.1951 § 160. The word "jointly" is defined in Webster's International Dictionary, Second Edition, Unabridged, as "In a joint manner; together; unitedly". The meaning of paragraph 6 therefore is that property acquired after the marriage, independently of what each then owned, would be owned together. Since there is no mention or inference of the right of survivorship or any other special incident of ownership, the meaning is the same as if the scrivener had used the phrase "owned as tenants in common".

■ Plaintiff, upon whom was the burden of proof, offered no testimony as to the comparative worth of the estate of her deceased husband as against the value of her own property. It is not apparent that the contract, properly construed, is oppressive or grossly inadequate. Both parties to the contract owned separate estates; both gave up any claim to the separate estate of the other; property acquired after marriage, independently of what each of them owned, was to be owned by both as tenants in common. Plaintiff's argument in this connection is therefore without merit.

■ Since the deeds to the lands herein concerned are void it follows that the deceased still owned, at the time of his death, such lands as he had acquired prior to his marriage to plaintiff, and that he owned those acquired after such marriage as a tenant in common together with plaintiff, and that plaintiff, as administratrix of his estate, is entitled to possession of such lands and the rents therefrom, pending a final order of the probate court with regard to distribution of the estate.

The judgment of the trial court is affirmed as to that part holding the ante-nuptial contract to be valid; it is reversed as to that part interpreting same and holding the 6 deeds to be valid and ordering an accounting by plaintiff; and the trial court is directed to enter judgment in accordance with the views expressed herein.

HALLEY, C. J., and CORN, DAVISON and BLACKBIRD, JJ., concur.

JOHNSON, V. C. J., and WELCH, J., concur in conclusion.

O'NEAL, J., dissents.