## JOHNSON *et al.* v. CRAIG *et al.*

No. 2266.   Opinion Filed February 18, 1913.

Rehearing Denied May 13, 1913.

(130 Pac. 581.)

1. **DEEDS—Delivery—Parol Evidence.** Where there is a question as to whether there had been a delivery of a deed of conveyance, the real test is the intention of the grantor, which intention may be manifested by mere acts or by words or both combined, and such acts and words and the circumstances relevant thereto are susceptible of parol proof.

2. **SAME—Evidence.** In an action to cancel a deed on the ground of nondelivery, where it appears that the grantor had previously declared on different occasions, his intention to leave all his property to grantee, a girl whom he had reared and cared for as his daughter from infancy, and, realizing his failing health, and approaching dissolution, sent for an attorney to draft the papers necessary to convey his property to grantee, and, after counseling with the attorney as to the best means

of doing so, made a will bequeathing his personal property to her, and a deed conveying all of his real property to her, and, after signing the will and acknowledging the deed, requests that they both be given to grantee, and thereafter stated that he had done so and had left all his property to grantee, such acts show a manifest intention to vest title in grantee, and constitute a delivery.

3. NEW TRIAL—Ejectment—New Trial as of Right. Section 4792, Wilson's Rev. & Ann. St. 1903, which gave the party against whom judgment was rendered in an action to recover real estate a second trial as a matter of right, was repealed by an Act of the Legislature approved February 9, 1909 (Sess. Laws 1909, c. 29). On February 15, 1909, a suit was filed to recover possession of certain real estate, and cancel a deed thereto. In April, 1910, the cause was tried and judgment rendered against plaintiff. On April 30, 1910, plaintiff demanded a second trial as a matter of right, and was refused. Held, that a second trial as a matter of right was properly denied.

(Syllabus by Harrison, C.)

*Error from District Court, Kingfisher County;*
*A. H. Huston, Judge.*

Action by John H. Johnson and others against W. C. and Etta Craig and others. Judgment for defendants, and plaintiffs bring error. Affirmed.

*F. L. Boynton,* for plaintiffs in error.
*D. K. Cunningham* and *L. R. Weiss,* for defendants in error.

Opinion by HARRISON, C. This action was instituted by John H. Johnson and other brothers and sisters, collateral heirs of James Johnson, deceased, to set aside a deed and recover possession of a certain tract of land situated in Kingfisher county and certain town lots in the city of Kingfisher, deeded to defendant Etta Craig by deceased during his lifetime. The cause was tried at the April term, 1910, resulting in a verdict and judgment for defendants. From this judgment plaintiffs appealed upon fifteen assignments of error. But the decisive question involved is whether, under the evidence, the deed was in fact delivered to defendant Etta Craig by deceased during his lifetime.

The facts are: That Etta Craig and her sister while they were mere babies were taken to be reared by deceased and his wife. That after being so taken they had lived with, made their home with, and had been cared for and provided for by, deceased and his wife during their lifetime. At the time of taking the children deceased lived in Freemont county, Iowa. Some years later he moved to Nebraska, taking the children with him. While living in Nebraska his wife died. Thereafter he removed to Oklahoma, and purchased the property in question. The older of the two girls, Etta, had married William C. Craig, one of the defendants herein. Craig and his wife, at the request of deceased, came to Oklahoma to live with him, and were living with him at the time of his death. It appears that, before deceased came to Oklahoma, he had made a will bequeathing his property to the two girls, but that such will had been left with some depositary in the state of Nebraska. Hence the provisions of this will do not appear in the record. But a short time prior to his death, the younger girl having married somewhat against his wishes, he made a new will, bequeathing all of his personal property to the older girl, Etta Craig, and on the same day executed a deed conveying all of his real estate to her; W. C. Craig, her husband, being named as executor in the last will, which, after the death of deceased, was duly probated, and the deed recorded. It is claimed by plaintiffs that the deed in question, though executed on the day the will was made, was not in fact delivered until after the death of deceased, and was therefore insufficient to convey title either as a will or as a deed. The facts as to delivery being controverted, the whole case, therefore, rests upon the question of fact whether the deed was delivered before or after the death of deceased.

That such question is one of fact to be determined by the circumstances, actions, statements, and intention of the grantor is the consensus of authorities. 14 Ballard on Real Property, secs. 146, 152; 3 Devlin on Deeds (3d Ed.) sec. 265; 9 Am. & Eng. (2d Ed.) 154; 13 Cyc. 750, and authorities cited by the foregoing text-writers. And that such fact is susceptible of parol

proof is also well settled by the same authorities.   13 Ballard on
Real Property, sec. 140; *Price v. Hudson,* 125 Ill. 284, 17 N. E.
817; *Reichart v. Wilhelm,* 83 Iowa, 510, 50 N. W. 19; 3 Devlin
on Deeds (3d Ed.) 266.. See, also, notes and authorities cited
by each of the above text-writers.

It is urged by plaintiff in error that the court erred in
divers instances in the reception and rejection of testimony, but
from an examination of the record we find no material error
in this regard.   Nor do we find any materially prejudicial er-
ror in the court's charge.   The decisive fact to be determined
by the jury from the evidence was whether the deed had been
delivered before or after the death of the grantor.   The two
phases of the question were fairly submitted to the jury in the
court's charge.   The jury heard the testimony as to the state-
ments of the grantor, his declarations as to what he desired to
do with his property, and what he intended to do with it, as to
just what his acts and statements were at the time of the
execution and delivery of the deed, and as to what were his acts
and statements in reference thereto after the execution of the
deed, and from a consideration of all these facts and circum-
stances they said by their verdict that the deed was delivered
prior to the death of the grantor.   This verdict is reasonably
supported by the evidence, and is in harmony with the law.   The
record shows:   That deceased had stated to divers persons that
the two girls were his adopted daughters (however, owing to
the alleged loss of some of the adoption papers, the proof failed
to sustain this contention, and the court eliminated the adop-
tion feature from the case in his instructions), and that it
had always been his intention to leave all his property to them
at his death.   That, owing to his failing health, he foresaw
his impending dissolution and sent for an attorney, Mr. Mc-
Naught, to come out and draw his will.   That McNaught and
his wife came out to Johnson's house, and that on that and on
previous occasions he had stated to McNaught what his inten-
tions were as to the disposition of his property, and that he
intended that it should go to the girls.   That on the occasion

of the drawing of the will he stated to McNaught, in the presence and hearing of several others, that it had been his intention to bequeath his property to the two girls, but that Lovina, the younger, having married against his wishes, and not being mentally bright, he would give it all to Etta, the older, as she had always been a good girl, and he felt sure the she would properly take care of Lovina. That he consulted with McNaught as to whether it would be better to make a deed in fee simple to the real estate and to bequeath the personal property by will. That, after consulting and talking over this matter, he made a will bequeathing all of his personal property, and executed a deed conveying all his real property to Etta Craig. That after the will had been duly signed and witnessed, and the deed signed and acknowledged, he put them in a tin box, with instructions that it be given to Etta to take care of. That Etta, Mrs. Craig, being sick and in bed at the time, did not take the papers into her own hands, but told her husband to put them away in the drawer. This is the substance of the testimony of attorney McNaught and his wife and of the defendant Craig and his wife and others present at the time.

It is contended by plaintiff in error: That these acts on the part of the grantor were not sufficient to show an intention to relinquish all control over the deed at that time, and were not sufficient to constitute a delivery of the deed. That it was intended by the grantor to give the box containing the papers into Mrs. Craig's hands merely to be taken care of by her for him, and that delivery would take place after his death. It must be observed, however, that the acts of the grantor relevant to his intention in the matter are not limited solely to what took place on the day of the execution of the instruments. But the testimony of Mr. and Mrs. Craig, which was not denied and which is corroborated by subsequent events, is that the next day or two after the deed and will had been made and given to her she and deceased had a conversation in reference to the papers and in reference to whether the deed was in proper shape. That he asked her to get it for him and let him ex-

amine it. That he did so, and they discussed its provisions: That he suggested that it might be taken to town and submitted to another lawyer for examination, and that, if it were not all right, he would make it all right. That, pursuant to this conversation, she took the deed to town and submitted it to attorneys, who pronounced it all right. That she returned with it and informed him what the lawyers had said. That he gave it back to her and told her to keep it. That she thereafter took it to town and deposited it in a safe for safe keeping. That after the conversation above, no further mention was ever made of the deed, nor any further expression of any desire to exercise any control over it was ever made to grantee by deceased. Now, under the overwhelming weight of authority, from the decisions of the courts of nearly every state in the Union as well as from the Supreme Court of the United States, the real test of delivery is the intention of the grantor.

In 9 Am. & Eng. (2d Ed.) 154, appears the following text:

"The real test of delivery is this: Did the grantor by his acts or words, or both, intend to divest himself of title? If so, the deed is delivered"

—citing a long list of authorities. The same doctrine is announced in 13 Cyc., also Devlin on Deeds and Ballard on Real Property.

"What amounts to a final delivery and acceptance of a deed is a question of law, as is also the weight of uncorroborated evidence. But whether facts exist which constitute a delivery is a question for the jury, to be determined, under a proper charge of the court, from all the evidence on that point, where there is conflicting testimony. The rule applies to an acceptance or dissent of the grantee, and likewise to the question of the time of delivery." (13 Cyc. 750.)

In 9 Am. & Eng. 153:

"Delivery is a word, act, or both combined, by which a grantor expresses a present intention to divest himself of title to property described in an appropriate deed. No particular form of delivery is required. * * * "

This definition in substance is adopted by practically all modern text-writers on the subject.

"The question of whether or not there has been a delivery of a deed is one largely of intent, which intent is to be gathered from the facts and circumstances surrounding the transaction in connection with positive proof." (14 Ballard on Real Property, 146, citing *Brown v. North,* 141 Iowa, 215, 119 N. W. 629; *Riegel v. Riegel,* 243 Ill. 626, 90 N. E. 1108; *Glade Coal Mining Co. v. Harris,* 65 W. Va. 152, 63 S. E. 873; *Gaylord v. Gaylord,* 150 N. C. 222, 63 S. E. 1028; *Ackman v. Porter,* 239 Ill. 578 [88 N. E. 231]; *Flynn v. Flynn,* 17 Idaho, 147, 104 Pac. 1030; and 9 Am. & Eng. 154.)

Also section 147, 14 Ballard.

"If there exists an intention on the part of the grantor to convey the land to another and he executes a deed to carry that intention into effect, the deed is delivered whenever the grantee obtains possession of it and accepts it." (1 Devlin on Deeds [3d Ed.] sec. 260a.)

*Id.* 261:

"It is not necessary to pursue any particular course to effect a valid delivery of a deed. It is sufficient that a grantor intends when executing a deed, to be understood as delivering it. * * * Like any other fact, proof of which is required, the delivery of a deed may be established by circumstantial evidence."

*Id.* 266:

"Where there is positive evidence that a deed was delivered at its date and it is shown in addition to this that the deed was ready for delivery at that time, and that its delivery was practicable, evidence consisting of verbal admissions and the testimony of prejudiced parties, to establish a delivery at a different time, cannot be regarded as convincing in a proceeding in equity. * * * Declarations of a grantor that he had given his boys the land are admissible as against interest on an issue as to delivery * * *"

—citing *Chew v. Jackson,* 45 Tex. Civ. App. 656, 102 S. W. 427.

*Id.* 269:

"The law does not prescribe any particular form of words or actions as necessary to consummate a delivery. Anything done by the grantor from which it is apparent that a delivery

was thereby intended either by words or by acts or both combined is sufficient."

In *Martin v. Flaharty,* 13 Mont. 96, 32 Pac. 287, 19 L. R. A. 242, 40 Am. St. Rep. 415, is an exhaustive discussion and citation of authorities on the question what constitutes delivery, in which case the intention of the grantor was the decisive question involved. In this case Pemberton, C. J., quoting from other authorities, says:

"In *Belden v. Carter,* 4 Day, 66, 4 Am. Dec. 185, a Connecticut case, depending on this statement of facts: 'Delivery of Deed.—When Takes Effect. A grantor, having signed, sealed, and acknowledged a deed, took it up, in the absence of the grantee, and said to another: "Take this deed and keep it. If I never call for it, deliver it to B. after my death. If I call for it, deliver it to me." The party then took the deed, and, the grantor dying soon afterwards, and never having called for it, it was delivered to the grantee.' Upon these facts the court say and hold: 'The grantor delivered the deed to Wright with a reservation of a power to countermand it, but this makes no difference; for it was in the nature of a testamentary disposition of real estate, and was revocable by the grantor during his life, without an express reservation of that power. The case, then, stands upon the same footing as if there had been no reservation of a power to countermand the deed. It was a delivery of a writing as a deed to the use of the grantee, to take effect at the death of the grantor, deposited in the hands of a third person to hold till that event happened, and then to deliver it to the grantee. The legal operation of this delivery is that it became the deed of the grantor presently; that Wright held it as a trustee for the use of the grantee; that the title became consummate in the grantee by the death of the grantor; and that the deed took effect, by relation, from the time of the first delivery.' In *Newton v. Bealer,* 41 Iowa, 334, in a case nearly on all fours with the case at bar, Day, J., delivering the opinion of the court, on page 339, says: 'Where one who has the mental power to alter his intention, and the physical power to destroy a deed in his possession, dies without doing either, there is, it seems to us, but little reason for saying that his deed shall be inoperative, simply because, during life, he might have done that which he did not do. It is much more consonant

with reason to determine the effect of the deed by the intention existing up to the time of death than to refuse to give it that effect because the intention might have been changed. Applying this doctrine to the deed in question, there can be no doubt that it should be sustained. The deceased, as he frequently declared, had made all the provisions for his other children that he intended to make. When, within a very few days of his death, and evidently, as appears, contemplating approaching dissolution, he says that he has his property all fixed, and points to the chest in which the deed would be found, which, as he supposed, had the effect to fix his property so that there would be no "fussing" about it when he was gone. He thus manifested an unequivocal intention, within a very short time of his death, to have this deed operate as a disposition of his property, and any construction of the law which ignores this intention and defeats this purpose prefers shadow to substance.' See cases cited. In *Hathaway v. Payne*, 34 N. Y. 92, a case wherein the facts are as nearly like the facts in the case at bar as usually happens, the court hold that: 'Where a deed is to be delivered to the grantee on the death of the grantor, the title, by relation, passes at the time the deed was left for delivery.' Potter, J., delivered the opinion in this case, and, after viewing at great length the facts, in stating the law and citing the authorities, says: 'Looking to the language of the agreement itself, for the purpose and intent of this conveyance, it left no condition to be performed before delivery. It required nothing but the lapse of time, to wit, the death of both grantors, when Herrendeen, the agent, trustee, or depositary of the deed (by whatever name he may be called), by mutual direction of the parties, not alone that of the grantor, who alone could not revoke a mutual agreement, immediately to deliver it, as a good and valid conveyance of all the lands therein contained. If we look at the intent of the parties to the deed, as manifested by their acts, independent of the language of their agreement— the one granting, the other accepting, the grant of this part of the same premises—it is equally apparent that the parties intended the first deed as a present conveyance.' In *Ruggles v. Lawson*, 13 Johns. [N. Y.] 285, 7 Am. Dec. 375, A. executed a deed of lands, in consideration of natural love and affection, to his two sons, and delivered it to C., to be delivered to his sons in case A. should die without making a will; and, A. having died without a will, C. delivered the deed to the sons. It was held that this was a valid deed, and took effect from the

first delivery; that this was not an escrow. In *Tooley v. Dibble,* 2 Hill [N. Y.] 641, a father signed and sealed a deed purporting to convey to his son a farm, placing the deed in the hands of B. with instructions to deliver it after the father's death, but not before, unless both parties called for it; and, after the father died, B. delivered the deed accordingly. It was held that the title of the son took effect, by relation, from the time the deed was left with B., and that the son's quitclaim, executed intermediate the leaving the deed with B. and the father's death, though importing a mere conveyance of the son's 'right in expectancy' in the land, would pass his title. The cases of *Goodell v. Pierce,* 2 Hill [N. Y.] 659, and *Hunter v. Hunter,* 17 Barb. [N. Y.] 25, are but confirmations of this view of the title taking effect from the first delivery of the deed. In the case of *Belden v. Carter,* reported in 4 Day, 66, 4 Am. Dec. 185, a deed was delivered to a third person to keep, and, if not called for, to deliver it after the death of the grantor. It was held that by legal operation it became the deed of the grantor presently, and that the depositary held it as a trustee for the use of the grantee, and that the title became consummate in the grantee by the death of the grantor, and the deed took effect, by relation, from the time of the first delivery."

Now that the jury has heard all of the testimony in the case at bar pertaining to the declarations and acts of the grantor at the time of the execution of the deed, together with the testimony of a number of neighbors and friends of his who testified to having heard him repeatedly say before the deed was executed that he intended to leave all of his property to the girls, and the testimony of others that after the date of the deed he had stated that he had left it to them, and having from such testimony and from all the facts and circumstances relevant to the matter concluded that it was the intention of the grantor to pass title to grantee, and that by such acts he did pass such title and divested himself thereof, the question then arises, is such verdict so manifestly erroneous that we should say as a matter of law it should be set aside? In view of the authorities herein cited and in the light of the testimony in the case, we must answer in the negative. In so answering, it is but just to say that, under the law and the facts in this case, there was

a delivery, and that the verdict of the jury was correct. We have not overlooked the testimony submitted in behalf of the plaintiff, nor the argument and authorities cited by plaintiff for the purpose of disproving delivery. We think upon the whole, from a careful examination of the record and of the authorities, that the judgment of the court below should stand.

There is one other question urged by plaintiff in error which should be determined. After the trial, which was in April, 1910, defendant filed motion for a new trial based upon alleged errors occurring during the trial. Hearing was had and the motion overruled. Thereupon, on April 30th, and at the same term of court, defendant made demand for a second trial as a matter of right under section 4792, Wilson's Rev. & Ann. St. 1903. The court overruled this motion, and denied defendant the right of a second trial. It is urged by plaintiff in error that the court denied defendant this right on the ground that it had been waived by presenting a motion for a new trial for cause. However, the record is not clear as to whether this right was denied defendant upon this ground or upon the ground that the statute giving such right had been repealed, and, inasmuch as the statute in question had been repealed before this action was filed, it is not necessary to say whether or not the court erred in denying a second trial on the ground that the same had been waived by presenting a motion for new trial for cause, as the ruling of the court is clearly sustained upon the latter ground. The statute relied upon is as follows:

"Section 4792. In an action for the recovery of real property, the party against whom the judgment is rendered may, at any time during the term at which the judgment is rendered, demand another trial, by notice on the journal, and thereupon the judgment shall be vacated, and the action shall stand for trial at the next term."

This statute was repealed February 9, 1909. (Sess. Laws 1909, c. 29). This suit was not filed until February 15, 1909, and not tried until April, 1910. Therefore defendant was not entitled to a second trial as a matter of right at the time the motion was filed. It is true the repealing act, although ap-

proved February 9, 1909, did not become effective until May 10, 1909, but this fact does not alter the status of defendant's right at the time the motion was filed. The right to a second trial while section 4792 was in force was not an inherent substantive right which was mandatory on the court to grant in all cases whether demanded or not, but was merely a right of procedure, available only upon the express demand of the party against whom judgment had been rendered—a right which never matured until after one trial had been had, and then only when demanded by the losing party. Therefore the right to a second trial would not have matured to defendant had the statute been in force until after the first trial had been had and at that time, and at the time the demand was made such right had been taken away by the aforesaid act of the Legislature. Hence the court did not err in refusing a second trial.

The judgment of the court below should be affirmed.

By the Court: It is so ordered.