**LOOSEN, Adm'r, et al. v. STANGL.**

No. 21229. Opinion Filed May 2, 1933.

Louis A. Reilly, for plaintiffs in error.

Welcome D. Pierson, for defendant in error.

BUSBY, J. This is an appeal from the district court of Kingfisher county, Okla. The action was instituted for the purpose of quieting title to real estate. The trial court rendered judgment for the plaintiff, and the defendants appeal.

The parties to this controversy appear in this court in the reverse order, but for the sake of convenience will be referred to as they appeared in the court below.

The principal problem to be determined is the sufficiency and effect of the delivery of a deed made by a grantor (now deceased) during his lifetime to a third person with instructions to deliver the same to the grantee subsequent to his (the grantor's) death, the grantor at the time of the delivery reserving the right to revoke the delivery prior to his death.

The record discloses that Andrew Stangl departed this life on the 28th day of September, 1928. At the time of his death his heirs at law were his seven children, six sons and one daughter. One of the sons was

plaintiff, Lawrence V. Stangl. The deceased had a rental safety deposit box in the First Bank of Okarche at Okarche, Okla. At the time of his death this box contained several Liberty Bonds and unpaid promissory notes belonging to the deceased, and also an unrecorded warranty deed bearing date of execution on the 28th day of February, 1921. This deed was signed by Andrew Stangl, as grantor, and acknowledged before J. Collins, a notary public. The deed purported to convey to Lawrence V. Stangl, subject to a life estate reserved by the grantor, a quarter section of land located in Kingfisher county, Okla., and described as the N. E. ¼ of sec. 13, twp. 15 N., R. 9 W. I. M. This deed was enclosed in an unsealed envelope on which the following typewritten statement appeared: "To F. H. Loosen, Cashier of the First Bank of Okarche deliver deed enclosed after my death to Lawrence V. Stangl, Okarche, Oklahoma. Nov. 10th, 1926." Under this statement was the signature of Andrew Stangl.

J. Paul Loosen, the son of F. H. Loosen, was appointed administrator of the estate of Andrew Stangl and assumed possession and control of the deposit box and the contents thereof, including the deed above mentioned.

On February 2, 1929, Lawrence V. Stangl, the grantee named in the deed, commenced this action in the district court of Kingfisher county, Okla., against J. Paul Loosen, as administrator of his father's estate, and against his brothers, John, Albert, Joseph, William, and Charlie, and his sister Rosie. In his petition plaintiff alleged his possession and ownership of the property described in the above mentioned deed, claiming title thereto by virtue of the deed. He further pleaded that the defendants Rosie Stangl, Joseph Stangl, William Stangl, and Charlie Stangl, had, on the 2nd day of February, executed and delivered to him a quitclaim deed, conveying to him any interest they or either of them had in the property concerned in the action. Plaintiff then prayed judgment quieting title in himself. The defendants, who had executed the quitclaim deed, voluntarily entered their appearance and disclaimed any interest in the land. The administrator filed a separate answer, expressing doubt that the deed had been delivered, and requesting an adjudication of the matter by the court. The defendants John Stangl and Albert Stangl filed a joint answer, denying that the deed was ever delivered, and also alleging that the grantor had the power to revoke and cancel the deed during his lifetime, and that at the time of his death Andrew Stangl was the fee-simple owner of the real estate in question. They also pleaded that by reason of the law of descent and distribution they were each owners of an undivided 1/7 interest in and to the land in question. They requested that their interest in such real estate be adjudicated, and prayed for other incidental relief, including a partition thereof.

The issues framed by the pleadings presented to the trial court for determination a simple question of fact: Was there any delivery of the deed in question? In the event that question should be answered in the affirmative, a mixed question of law and facts was presented: Was the delivery sufficient as a matter of law?

In May of 1929, the case was tried to the court without the intervention of a jury, and, at the conclusion of the evidence introduced by the respective parties, the court rendered judgment in favor of the plaintiff, decreeing him to be the owner of the land in question by virtue of the deed. In rendering the decision the court, in connection with its general judgment in favor of the plaintiff, made a specific finding of facts concerning the delivery of the deed and the conditions in connection therewith. This finding appears in the journal entry in the following language:

"The court further specifically finds that the warranty deed executed by Andrew Stangl to Lawrence V. Stangl, on the 28th day of February, 1921, and deposited by the said Andrew Stangl, on the 10th day of November, 1926, with F. H. Loosen, cashier of the First Bank of Okarche, to be delivered to the grantee, Lawrence V. Stangl, upon the death of the grantor, Andrew Stangl, was in fact delivered to the grantee, Lawrence V. Stangl, prior to the death of the grantor, Andrew Stangl, in that said deed was left with F. H. Loosen, cashier of the First Bank of Okarche, on the 10th day of November, 1926, with written instruction on the part of the grantor, Andrew Stangl, to the effect that said deed was to be delivered to the grantee, Lawrence V. Stangl, upon the death of the grantor, Andrew Stangl, and that while such delivery was revocable and the grantor had the power to recall the same, he died without exercising such power and such instructions were never revoked during his life time, and were therefore in full force and effect at the time of the death of the said Andrew Stangl, on the 28th day of September, 1928; and by the terms of said deed the said Andrew Stangl granted, bargained, sold, and conveyed unto the plaintiff, Lawrence V. Stangl, the following described property, to wit: The northeast

(N. E. ¼) of section thirteen (13) in township fifteen (15) north, range nine (9) west, I. M. Kingfisher county, Okla., subject to a life estate reserved by the grantor, Andrew Stangl, in and to said property; that upon the death of said grantor, Andrew Stangl, on or about the 28th day of September, 1928, clear and indefeasible title in and to the property referred to above became absolute and vested in the grantee, Lawrence V. Stangl, and the said Lawrence V. Stangl was entitled to immediate custody and possession of the deed in the hands of F. H. Loosen, cashier of the First Bank of Okarche, which deed had been left by grantor, Andrew Stangl with instruction that said deed be delivered to the grantee, Lawrence V. Stangl, upon the death of the grantor, Andrew Stangl." (Emphasis ours.)

We deem it unnecessary to make a detailed review of the testimony of the various witnesses as disclosed by the record. However, a brief review of the substance of the testimony will clarify the problems involved.

In addition to the facts which have already been set forth in this opinion, it appears that the deed in question was originally executed by Andrew Stangl in 1921, and acknowledged before J. Collins, a notary public. This deed as drafted reserved a life estate in the grantor in the property conveyed. This is some evidence of an intention on the part of the grantor at the time of the execution of the deed to make an immediate delivery thereof. However, the evidence discloses that the deed never came into the actual possession of the grantee, Lawrence Stangl. At the time of its execution it was left with Mr. Collins, who at that time was connected with the Collins Investment Company at Kingfisher, Okla. That company discontinued its business at Kingfisher, and the deed in question was obtained by the grantor, Andrew Stangl, and in November, 1925, he delivered it to a Mr. Spiece. After the deed had remained with Mr. Spiece for some time, it was withdrawn by the grantor from his custody and possession. It was then placed in the safety deposit box rented by Andrew Stangl in the bank at Okarche. The evidence is not clear as to who placed it in the box. It appears that the safety deposit box was rented by Mr. Stangl from the bank acting through Mr. F. H. Loosen, and that it was rented on the same date that the memorandum was written on the envelope in which the deed was enclosed. Mr. F. H. Loosen, the man to whom the notation on the envelope was addressed, died prior to the time of this cause, and we do not have the benefit of his testimony. J. Paul Loosen, the administrator, in his testimony, revealed that he was the son of F. H. Loosen, and that he was connected with the bank at the time of the transaction, though he had no personal knowledge thereof. He identified the signature of Andrew Stangl appearing on the envelope below the typewritten memorandum, and expressed his opinion that the typewritten memorandum was written by his father. It is thus apparent that the details of the transaction by which the deed was placed in the safety deposit box, are not revealed in the record by direct and positive proof, but are more the subject of inference to be drawn by the other facts and circumstances in the case. The receipt issued to Andrew Stangl for the safety deposit box recited that the box during the rental period was to be the property of Andrew Stangl. He at all times had access to the lock box. It appears, however, from the record, that the key to the box was left in the bank, and, of course, the officers of the bank could by the use of the key obtain access to the box.

It further appears from the evidence that, subsequent to the execution and acknowledgment of the deed, Andrew Stangl had executed an oil and gas lease on the property in question, describing the property as belonging to himself, and failing to reveal in the oil and gas lease the existence of any interest therein owned by Lawrence V. Stangl. Likewise the deceased had conveyed away a portion of the royalty, treating the entire estate in the property as his for the purpose of that conveyance. These conveyances in connection with the oil and gas rights, however, were executed before the date of the memorandum appearing on the envelope in which the deed was enclosed when it was placed in the safety deposit box.

In addition to the foregoing facts, a number of witnesses testified to the statements made by the deceased at various times during the time that the deed was outstanding. These statements attributed to the deceased indicated that he entertained the opinion that he had made a sufficient disposition of the property so that Lawrence Stangl would obtain the same after his death. They are not very satisfactory as evidence for the reason that they are in the nature of conclusions of the deceased as to the legal effect of his acts, rather than detailed statements concerning the facts in connection with the delivery of the deed from which the court could draw a conclusion.

It will be seen from the foregoing summary of the evidence that there is little dispute as to the evidentiary facts. However, conflicting inferences arise therefrom which render difficult an exact determination of the ultimate facts in the controversy.

After a careful review of the record, we are convinced that the trial court was justified in making the specific finding of fact which we have previously quoted from the journal entry. We cannot say, after having read the testimony incorporated in the record, that these facts were against the weight of the evidence.

It remains for us to determine, then, whether the trial court, after having determined the facts, arrived at a correct conclusion in the judgment rendered.

A general judgment is deemed to include a special finding in accordance therewith on every disputed question of fact necessary to sustain the judgment, but, where specific findings of fact are made and properly incorporated in the journal entry as a part of the record, they control over any conflicting presumption arising from a general judgment as to what the court found. These findings of fact, together with the opinion of the court, may be considered in determining the correctness of the conclusion reached. Rogers v. Harris, 76 Okla. 215, 184 P. 459. Having determined that the special findings of the trial court, to the effect that the delivery of the deed in question was a revocable delivery, was reasonably supported by the evidence, the correctness of the conclusions reached in rendering judgment for the plaintiff places squarely before us the legal question: Was the delivery of the deed by the grantor, Andrew Stangl, to a third party, F. H. Loosen, with instructions to deliver it to Lawrence V. Stangl, the grantee, after the death of the grantor, a sufficient delivery when the grantor at the time of the delivery reserved the right to revoke the delivery and recall the deed at any time prior to his death?

Recorded cases reveal that situations of this character have been a prolific source of litigation throughout the development of the law. Questions of this character have been considered by this court on at least six different occasions. These cases are: Hall v. Dollarhide, 116 Okla. 180, 224 P. 813; Wright v. Anstine, 96 Okla. 162, 220 P. 928; Kay v. Walling, 98 Okla. 258, 225 P. 384; Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237, Shaffer v. Smith, 53 Okla. 352, 156 P. 1188; Johnson v. Craig, 37 Okla. 378, 130

P. 581. While it is possible to reconcile the holdings of this court in the cases just cited, it is utterly impossible to reconcile and harmonize the language and the reasoning which appear therein.

The case of Snodgrass v. Snodgrass, supra, is also recorded in 52 A. L. R. at page 1213, and is supplemented by exhaustive annotations beginning at page 1222, in which the cases dealing with the question in controversy are collected and classified. Previous enlightening discussions and annotations on the question under consideration appear in connection with selected cases in the following reports: Ann. Cas. 1915 C. 378; 54 L. R. A. 865; 4 L. R. A. (N. S.) 817; 9 L. R. A. (N. S.) 224; 38 L. R. A. (N. S.) 941. The rule announced in the Snodgrass Case, in syllabus paragraph 1 of the court, seems to be in harmony with the greater weight of authorities and with the better reasoning in this and other jurisdictions. The rule is stated in syllabus paragraph 1 as follows:

"If a grantor, in executing a deed in which he reserves a life estate, intends that then and there he vests in the grantee the present absolute ownership of said real estate, subject to such life estate, and by his acts does place it beyond his lawful power, in event of a change of mind or heart, to otherwise dispose of said real estate by will or deed or in other manner, then, through the acceptance by the grantee, there is a delivery of the deed by the grantor during his lifetime and title passes in the lifetime of the grantor to the grantee therein named and the deed is valid and may be enforced after the death of the grantor. Otherwise, and if the grantor merely intended that he should so part with such control at his death, the instrument is merely a will, regardless of its name, and is not valid or enforceable unless executed and attested in form and manner required by law relating to last wills and testaments. Such deed itself may be left by the grantor on deposit with a third person to hold until his death, provided the aforesaid essential elements of delivery are established, and acceptance by the grantee may be implied from the facts without an expressed acceptance being proven."

The courts are almost universally agreed that a deed cannot be substituted for a will for the purpose of making a testamentary disposition of property. There is a distinction between a deed and a will in the manner of the operation of each of the instruments. A deed where properly delivered operates to vest the title to the estate intended to be conveyed in the grantee at the

235

time of the delivery. When an effective delivery has been consummated, the rights of the parties become fixed, and, once an effective delivery has been made, the grantor cannot thereafter defeat the conveyance by revocation or recall. The estate conveyed is after delivery the property of the grantee. In the case of a will, the vesting of the estate does not occur until the death of the testator, and the devise may be revoked by the testator at any time prior to death. It may also be rendered inoperative by a conveyance of the property prior to death. If a person desires to make a testamentary disposition of his property, he must comply with certain formalities required by law regulating the manner of the execution and publication of the will. These requirements are imposed by law for the protection of creditors and heirs of the decedent. If a deed could be made to perform the same functions as a will, and the grantor can retain the right to revoke the grant at any time prior to his death, the same as in the case of a will, the statutes of the state prescribing the manner in which testamentary disposition of property may be made would be a farce, as was said by this court in the Snodgrass Case, supra:

"Under a contrary theory, a man could from time to time execute deeds, mortgages, bills of sale, and assignments of choses in action, conveying all of his property to others who could not learn thereof, deposit same with some third person who did not know of their contents, destroy and change them and convey the property to others from time to time in a similar method, and all of this he could do in such a manner as to leave the grantees therein named powerless to prevent the changes from being made in such conveyances. Thereby, in fact, though not in the idle contrary theory suggested, he would retain absolute control over the documents and the title to the property itself as long as he lived, and dying, he would evade the inheritance tax, defeat the creditors of his estate, and deprive the probate courts of all jurisdiction over his estate whenever he should die. Thereby a man's heirs at law and the natural objects of his love and affection would be deprived of the safeguards placed by statute about the execution of a testamentary document which changes the course of descent and distribution by the lawmakers declared to be the natural one. Unless we are correct in our conclusions, then the statutes of the state specifying the form and manner for the execution and attestation of testamentary documents had about as well be repealed."

The real test in determining whether the delivery of a deed to a third person is sufficient is, Did the grantor at the time of the alleged delivery of the deed intend to part with control over the instrument and convey the estate described in the deed to the grantee without reserving the right to revoke or recall the deed? If he parted with all dominion over the deed and placed it beyond recall, the deed is effective as a conveyance during the lifetime of the grantor. If he retains the right to control the deed and to recall the same, and thereby defeat the grant, the delivery is ineffective as was stated in the Snodgrass Case, supra, as follows:

"The books are filled with cases on the legal questions here involved, and upon the pure questions of law they present a unanimity of opinion such as is rarely found. To be effective after the grantor's death, the deed must have been executed by the grantor in the form and manner required by law for the execution of deeds and in the lifetime of the grantor, he, the grantor, must have caused such deed and the title to such real estate to have passed completely beyond his power and control, and have caused the title to same to pass into the control of the grantee, although the document itself may have been reposed in the hands of some third party, and a life estate reserved to the grantor."

The general rule is also tersely stated in 8 R. C. L. at page 986, in the following language:

" * * * The great weight of authority is that the grantor must not only deliver the deed to a third person for the benefit of the grantee ultimately, and in some way express his intention to that effect, but must also part both with the possession of the deed and with all dominion and control over it."

It is true that the mere fact that a deed remains in such a place that the grantor may obtain possession of the same does not in itself destroy the legality and effect of an effective delivery previously made, the test being whether the grantor at the time of the delivery retained the right to revoke as distinguished from the physical power to revoke. A person may have the power to do a thing which is entirely inconsistent with his legal right. This distinction was recognized in the Snodgrass Case by the use of the term "lawful power" in announcing the rule which was quoted, supra.

The trial court in this case specifically found that the delivery of the deed made by Andrew Stangl was revocable. This rendered the transaction undertaken to be accomplished the same as the result sought

to be accomplished by the execution of a will. The deed was not executed in the manner required for the execution of a will, and cannot operate as such. On the other hand, it was not delivered so as to place it beyond the lawful power of the grantor to revoke, and it was, therefore, ineffective as a deed.

The judgment of the trial court is reversed, with directions to enter judgment in favor of the defendants (plaintiffs in error), in accordance with the views herein expressed, and to proceed in a manner not inconsistent with this opinion.

SWINDALL, ANDREWS, McNEILL, OSBORN, BAYLESS, and WELCH, JJ., concur. RILEY, C. J., and CULLISON, V. C. J., absent.