### ELEM v. MAHANNAH.

No. 24289.   Oct. 6, 1936.

Simons, McKnight, Simons, Mitchell & McKnight, for plaintiff in error.

C. L. Foster and Otjen & Carter, for defendant in error.

PER CURIAM. This action involved title to a certain improved lot in the city of Enid, to which both the plaintiff and defendant had title deeds duly recorded.

In order for a correct understanding of the issues involved, it is necessary to make a brief statement of the facts.

This lot was originally owned by Henry Mahannah, father of the defendant, William Mahannah. At the time the events as set forth herein occurred, Henry Mahannah was very advanced in age, almost totally blind and deaf, living alone at Wichita, Kan., having as his sole companion one Emma A. Briles, also an elderly woman, and who kept house for and cared for Henry Mahannah for a number of years before his death. For this service he paid her a regular monthly wage. On May 5, 1926, Henry Mahannah and Emma A. Briles entered into a written contract by which, in consideration of her services to him and the continuation thereof to the time of his death, he contracted to convey to her clear title to the lot in controversy in this action. This contract was witnessed by two witnesses. Thereafter, and on August 10, 1927, Henry Mahannah executed his warranty deed and his testamentary will to the same lot to his son, William Mahannah, reserving to himself the rents and income during his life, and thereafter the right of occupancy to Emma A. Briles during her lifetime. This deed was executed by Henry Mahannah by his mark, his name being signed by his attorney, and his mark was witnessed by two witnesses and duly ac-

knowledged by one of the witnesses who was a notary public. This deed was left in the possession of C. L. Foster, his attorney, and it contained the provision that it was to be delivered by C. L. Foster to the grantee subsequent to the death of the grantor, and that the grantor surrendered at the time of the execution all dominion over the deed, and placed it beyond his power of recall or reclaim, and to vest in the grantee at the time of the execution the fee-simple title to the lot, but to postpone his use and enjoyment thereof as above set forth. This deed was executed at the home of Henry Mahannah, and in the presence of Emma A. Briles, his housekeeper.

Thereafter, and on the 16th day of November, 1927, Henry Mahannah executed a second deed to this same lot to Emma A. Briles, the consideration being $1 and services rendered and to be rendered. His signature by mark was witnessed by two witnesses and acknowledged before a notary public.

Henry Mahannah died at his home in Wichita, Kan., in the early morning of August 31, 1929, and his deed to Emma A. Briles was filed for record in the office of the county clerk of Garfield county the same day at 11:28 a. m., and the written contract was filed one minute earlier. Two days after the death of Henry Mahannah, and on September 2, 1929, negotiations were started between Emma A. Briles and the plaintiff, J. H. Elem, for the purchase of the lot in controversy. This resulted in J. H. Elem coming to Enid the next day and making such investigation as he desired with reference to the property, and his return to Wichita, and the execution and delivery to him of a warranty deed by Emma A. Briles on September 4, 1929, and this deed was filed for record in the office of the county clerk of Garfield county on September 6, 1929. The deed from Henry Mahannah to his son, William Mahannah, was not delivered to him by the attorney until some days after the death of Henry Mahannah, and was not filed for record in the office of the county clerk of Garfield county until the 10th day of October, 1929.

The grantee, Elem, very soon after taking his deed from Mrs. Briles, entered into an executory contract to sell this lot, but before the sale was consummated the deed of William Mahannah was placed of record, with the result that this suit was brought to quiet title against the William Mahannah deed. William Mahannah filed an answer denying the validity of the deed to Elem and asked the court to quiet the title

in him, and for general equitable relief. At the conclusion of the trial the court found the issues generally in favor of the defendant, William Mahannah, and entered a decree quieting his title to this lot and canceling the deed from Emma A. Briles to Elem, and from this adverse judgment J. H. Elem appeals to this court and assigns error of the trial court in the rendition of the judgment.

The plaintiff in error attacks the sufficiency of the deed from Henry Mahannah to his son, William Mahannah, upon two grounds: First, that it was not executed or acknowledged in accordance with the statutes of Oklahoma; therefore, did not convey title. It is not necessary, for the purpose of this case, to dwell upon that contention. The original deed from Henry Mahannah to his son, William Mahannah, and from Henry Mahannah to Emma A. Briles, each falls in the same class. Both were signed by mark, both were witnessed, but not in compliance with the law of Oklahoma relating to the signature to a deed by mark, but each was duly acknowledged before a notary public, whose seal was attached thereto, so that if it be conceded that the deed to William Mahannah was void, the same conclusion must be reached with reference to the deed to Emma A. Briles, but this court has held adversely to the contention of the plaintiff in error.

In the case of Likowski v. Catlett, 130 Okla. 71, 265 P. 117, this court said:

"Furthermore, the fact of the acknowledgment in due form being established as of that date, and provided there exists a competent grantor, notwithstanding there existed defects in the execution, such acknowledgment is considered as curing defects in the execution of such conveyances. Campbell v. Harsh, 31 Okla. 436, 122 P. 127; Hill v. Moore, 46 Okla. 613, 149 P. 211; Probert v. Caswell, 90 Okla. 67, 215 P. 733; Dyal v. Norton, 47 Okla. 794, 150 P. 703; Combs v. Lairmore, 106 Okla. 48, 233 P. 231. The rule so stated is:

" 'An officer's certificate of the grantor's acknowledgment of the execution of a deed filed for record is a sufficient compliance with a requirement of attestation by witnesses to the grantor's signature by mark.' Campbell v. Harsh, 31 Okla. 436, 122 P. 127."

While Henry Mahannah was aged, nearly deaf and blind, no contention is made that he was not competent.

These opinions base their reasoning upon the theory of the grantor's adoption by his act of acknowledgment of the signature written by another. See, also, Ford v. Ford,

27 App. D. C. 401, 6 L. R. A. (N. S.) 442, 7 Ann. Cas. 245.

The further contention is made that the deed from Henry Mahannah to William Mahannah was not effective to pass title to this lot because there was no sufficient delivery. The evidence was uncontradicted that the attorney drawing this deed for the grantor stated that the deed would have to be placed absolutely beyond the power of the grantor to recall, otherwise it would not be a valid deed, and the deed contained this recital:

"This deed, upon execution thereof, delivered by the grantor, to C. L. Foster, of Sedgwick, Kan., for the grantee, to be by the said C. L. Foster delivered to said grantee upon the death of the grantor, it being the intent and purpose of the grantor to surrender at this time, all dominion over said deed and to place the same beyond his power to recall or reclaim the same, and to vest in the grantee at this time the fee-simple title to the hereinbefore granted and described premises, but to postpone his use and enjoyment thereof, only, as set forth in said deed"

—and Henry Mahannah knew the import of this provision when he delivered this deed.

This was a sufficient execution and delivery of this deed to past title to the lot in controversy in praesenti to William Mahannah. Hall v. Dollarhide, 116 Okla. 180, 244 P. 813; Johnson v. Craig, 37 Okla. 378, 130 P. 581; Shaffer v. Smith, 53 Okla. 352, 156 P. 1188.

In the Hall v. Dollarhide Case this court said:

"The facts in this case are very similar to the facts in Shaffer v. Smith, 156 P. 1188, 53 Okla. 352. In that case the law was declared to be:

" 'Where the owner of land executes an instrument, attested as a deed, and in all respects in the form of a deed, and places it beyond recall in the hands of a third person, to be delivered to his daughters at his death, it should be treated by the court as a conveyance passing title in praesenti, with the right to possession postponed until the death of the grantor.'

"In Johnson v. Craig, 37 Okla. 378, 130 P. 581, this court held that—

" 'Where there is a question as to whether there had been a delivery of a deed of conveyance, the real test is the intention of the grantor, which intention may be manifested by mere acts or by words or both combined, and such acts and words and the circumstances relevant thereto are susceptible of parol proof.'

"The intent of the grantor should control, if his intent can be determined. There is no doubt from the evidence submitted by the plaintiffs, that the grantor, Charles R. Hall, intended that Russell A. Dollarhide should have the 54 acres of land described in the deed. The plaintiffs insist that their proof tends to snow that the grantor kept, or intended to keep, the deed in his control, since he left it in the hands of Prather, and, if it was so kept in his control, the grantor might have changed it or revoked it, and, therefore, the deed was evidence of intention to make testamentary disposition of the land, and was not operative as a deed passing title in praesenti, and could not be operative as a will, since not executed as a will is required to be executed. It seems that a similar contention was made in Newton v. Bealer, 41 Iowa, 334. The contention was disposed of in this language:

" 'Where one who has the mental power to alter his intention,. and the physical power to destroy a deed in his possession, dies without doing either, there is, it seems to us, but little reason for saying that his deed shall be inoperative, simply because during life he might have done that which he did not do. * * *'

"The plaintiffs cite and rely upon Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237. In that case the court cited and quoted from Shaffer v. Smith, supra, and adopted the reasoning in that case. The facts here presented are very similar to those in the Shaffer Case and very unlike the facts in the Snodgrass Case. We think the Snodgrass Case is not at all controlling here."

Finally, the contention is made that the judgment of the trial court is not only not sustained by sufficient evidence, but is contrary to the weight of the evidence in the case.

This requires a brief consideration of the evidence to ascertain whether or not the judgment of the trial court was correct and should be affirmed.

The plaintiff, Elem, was only entitled to prevail in this case upon the theory that he was an innocent purchaser for value without notice of any defects in his chain of title. The defendant, William Mahannah, in support of his answer that his deed was valid, produced as a witness the attorney who drew the deed and will for Henry Mahannah, the notary public who took the acknowledgment and who was a witness to the deed, and a third party, an attorney at Wichita, who was present, and these witnesses each testified without contradiction that the deed from Henry Mahannah to his son, William, was in all things fairly executed, that the deed and his will, executed

at the same time, represented his wishes and desires with reference to the disposition of this lot. The only other witness who could throw any light upon what transpired at this time was Emma A. Briles, the grantee of a subsequent deed to the same lot from Henry Mahannah, and the grantor of Elem, and who might reasonably be supposed to be a hostile witness to the claim of William Mahannah. As against this evidence the plaintiff, Elem, was the sole witness, as he produced no corroborating witnesses. A brief resume of his evidence shows that he had been acquainted with Emma A. Briles for some 30 years; that he had had certain business dealings and transactions with her from time to time culminating in his selling to her some oil properties, some five or six years before he took this deed, and for which at the time he claimed.to have had her note past due for several years in the sum of $1,100, with $155 back interest; that he knew the deceased, Henry Mahannah, knew that he was old, almost deaf and blind, and had visited at his home some three or four months before his death; that on the second day after Henry Mahannah died he was called by Mrs. Briles, or her daughter, to come to the Mahannah home, and that he went there on that day and was told by Mrs. Briles that Henry Mahannah was dead, and after some negotia-. tions agreed to purchase this lot for $2,500, subject only to the title being good; that the day following he went to Enid, examined the record, saw the deed from Mahannah to Briles, which had been filed for record on the forenoon of August 31st, also the contract between Mahannah and Briles filed one minute before; that he did not order an abstract; saw from records that there were no judgments or other deeds; that he may have paid the taxes then due on this lot; may have been furnished money by Mrs. Briles with which to pay; could not remember any details; went back to Wichita and closed the deal on September 4, 1929, paid Mrs. Briles $425 cash and not by check, and did not take a receipt; surrendered her note which he had been holding for a number of years, and agreed to pay her the remainder of the $2,500; the record does not disclose the presence of any witness to this transaction. The remainder of the purchase price was not evidenced by a note, but was evidenced by a written agreement which Mr. Elem did not have with him and was not produced in court, nor was the note claimed by Elem to have been due him from Mrs. Briles produced, and no corroborating evidence of any kind to that of his own was given. He was unable to tell the court how much was then due Mrs. Briles on the purchase price of the lot, nor how much rent she had collected and applied on the balance due. The evidence further developed that on August 2, 1928, William Mahannah executed and delivered to his father, Henry Mahannah, his promissory note for $5,000. This note in evidence shows to have been indorsed by Henry Mahannah, by mark, to Emma A. Briles on April 15, 1929, and later without date sold and transferred by Emma A. Briles to J. H. Elem, and Mr. Elem made an effort to collect this note by contacting the attorney for the Henry Mahannah estate, but Elem · testified in the trial that he had no interest in the note. Mr. Elem further testified that he knew that Henry Mahannah at the time of his death had surviving children, and yet he made no inquiry as to the circumstances under which Mrs. Briles received the deed from Henry Mahannah, and that the time of recording this deed a few hours after the death of Mahannah did not excite his suspicions. The record shows that there were at least four witnesses besides Emma A. Briles to the various alleged transactions between Henry Mahannah and herself, yet none of these witnesses, including Mrs. Briles, were produced at the trial, and the contention is made by the defendant in error that where it lies within the power of a party to an action to produce evidence upon an issue, and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party (Coats v. Riley, 154 Okla. 291, 7 P. [2d] 644) ; and the trial court evidently took that view of the case, and, in view of the facts as above recounted, it is our opinion that the trial court was justified in reaching the conclusion that Elem was not an innocent purchaser for value without notice, and that the facts as disclosed by the record were sufficient to put a prudent man on notice, which if pursued would have disclosed all the facts, and that the deed from Henry Mahannah to his son, William Mahannah, conveyed a present title to this property, hence the judgment for defendant.

The trial court heard all the evidence, had an opportunity to observe the demeanor of the witnesses, and was therefore in a better position than this court now is to determine the weight and effect to be given to the testimony. The trial court determined that the weight of the evidence was against the plaintiff, and from an examination of the record, and having read the testimony, we are unable to say that the judgment of the trial court is against the

clear weight of the evidence. The judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys J. I. Howard and R. A. Barney in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Howard and approved by Mr. Barney, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and RILEY, CORN, and GIBSON, JJ., concur.