## ANDERSON v. MAUK, Adm'r, et al.

No. 26815. March 23, 1937.

Rehearing Denied April 6, 1937.

Application for Leave to File Second Petition for Rehearing Denied May 4, 1937.

C. Everett Murphy, for plaintiff in error.

Karl D. Cunningham, for defendants in error.

BUSBY, J. This action is presented to us on appeal from the district court of Kingfisher county.

The principal question involved relates to the validity of deeds executed by a property owner during his lifetime and delivered by him to a third person with oral instructions to deliver such deeds to the grantees therein named upon the death of himself and his wife. The case also involves a question relating to the validity of a subsequent conveyance of the same property executed by the same property owner at a time when he is asserted to have been mentally incompetent to make a valid conveyance of real estate.

On December 4, 1931, Peter Fisher was the owner of the real estate involved in this action. On that date he and his wife joined in the execution of three deeds covering different portions of the real estate owned by him. These deeds had been prepared by one Alva D. Mauk. Each of the deeds was to a different grantee. The respective grantees were Kate Wallace, Annie Kennedy, and E. C. Woodard. On the date mentioned the grantor, in the presence of the grantees, delivered the deeds to the notary public, Alva D. Mauk, with oral instructions to hold until the grantor and his wife should die, and then give them to the grantees named in the deeds. The precise wording of the oral instructions which accompanied the delivery of the deeds, as related by the notary public, was:

"Mr. Mauk, I am going to give these deeds to you to hold until after I and my wife die, and when we have been put away I want you to see that these deeds are given to the parties that you made the deeds—that the deeds were made to."

At the time these deeds were delivered the question of how the debts of the grantor should be paid upon his death was discussed. The discussion in connection therewith is reflected by the following excerpt from the testimony of the notary public:

"Q. Was there any discussion had at that time, in your presence, relative to what would be done with this property, in reference to his debts? A. The debts would be paid. Q. By the grantees named in the deeds? A. Yes, sir."

It is not clear from the foregoing testimony nor from testimony appearing at any other point in the record whether the grantees named in the deeds undertook and bound themselves to pay the debts of the deceased, or whether the deceased merely expressed a desire that such debts should be paid by them. The payment of the grantor's debts was not made a condition precedent to the subsequent delivery of the deeds by the third party to the grantees.

On December 10th, six days after the deeds were delivered, the grantor and his wife joined in the execution of a mortgage to Willis Stanfill to secure the repayment of a loan then made for the sum of $250. The mortgage then executed covered a portion of the property described in the deeds which had previously been delivered to the notary public.

On January 16, 1932, Fisher and his wife joined in the execution and acknowledgment of a deed in which Forrest B. Anderson was named as the grantee and which covered all of the property described in the three deeds previously delivered to the notary public. This deed reserved to the grantors a life estate in the property. It was immediately delivered to the grantee therein named.

Peter Fisher died on March 3, 1932.

On the 31st day of May, 1934, this action was commenced by C. D. Mauk, as administrator of the estate of Peter Fisher, against Forrest B. Anderson, Willis Stanfill, Kate Wallace, Annie Kennedy, E. C. Woodard, Alva D. Mauk, and Milanda Fisher (wife of Peter Fisher).

The plaintiff in his petition sought a cancellation of the mortgage to Willis Stanfill and of the deed to Forrest B. Anderson on the theory that the deceased, Peter Fisher, was, at the time of the execution and delivery thereof, mentally incompetent to make a valid conveyance of the real estate. The plaintiff also sought in his petition to have his interest as administrator in the real estate (presumably for the purpose of paying debts) declared superior to the interests of the defendants Kate Wallace, E. C. Woodard, annd Annie Kennedy, they being the grantees in the deeds of December 4, 1931.

After the commencement of the action and in the month of July, 1934, Milanda Fisher, the wife of Peter Fisher, died.

In the subsequent pleadings and by a process of elimination, the controversy finally resolved itself into a contest between the grantees in the deeds executed on December 4, 1931, and Forrest B. Anderson, who claimed under the deed executed on January 16, 1932. The mortgage on the premises executed on December 10, 1931, is admitted to have been valid and effective, the same having been given for a cash consideration received from the mortgagee who was a bona fide encumbrancer for value and without notice of the alleged conveyances previously made.

It is the established law in this jurisdiction that when the owner of land executes a deed during his lifetime and delivers the same to a third party (who acts as a depository rather than as agent of the property owner) with instruction to deliver the deed to the grantee therein named upon his death, intending at the time of the delivery to forever part with all lawful right and power to retake or repossess the deed, or to thereafter control the same, the delivery to the third party thus made is sufficient to operate as a valid conveyance of real estate as distinguished from an abortive attempt to make a testamentary disposition thereof. See Loosen v. Stangl, 163 Okla. 231, 22 P. (2d) 364; Snodgrass v. Snodgrass, 107 Okla. 140, 231 P. 237, 52 A. L. R. 1213; Wright, Adm'r, v. Anstine, 96 Okla. 162, 220 P. 928; Kay v. Walling, 98 Okla. 258, 225 P. 384. The rule thus recognized in this jurisdiction is in accord with the overwhelming weight of authority in other states. See anno. 52 A. L. R. p. 1223.

It is equally well established that if the grantor intends at the time he makes the delivery to the third person to retain the lawful right and power to revoke or recall the instrument of conveyance, or to thereafter control the disposition of the same, the transaction constitutes nothing more than an ineffective attempt to make a testamentary disposition of the property, and the deed, not being executed in accordance with the statute of wills, is ineffective and invalid for that purpose. See Loosen v. Stangl, supra, and Snodgrass v. Snodgrass, supra.

The real test, then, in determining whether the delivery of a deed to a third party is effective as a conveyance or ineffective as an attempted testamentary disposition of the property is the grantor's intention at the time of the delivery of the deed to the third person. Loosen et al. v. Stangl, supra. If such delivery is accompanied by an intent to forever part with control, the delivery is effective, notwithstanding that the grantor may subsequently regret his action and attempt to place a different construction upon the transaction. See Kay v. Walling, supra; Hall v. Dollarhide, 116 Okla. 180, 244 P. 813. Thus the act of the grantor in subsequently dealing with the property in a manner inconsistent with the legal effect of the deeds previously delivered does not destroy their effectiveness, if, indeed, they were, in fact, effective as conveyances. Kay v. Walling, supra. So, it is generally held that where the instructions which accompany the delivery of the deed to a third party are so definite and unequivocal that it is certain from an examination thereof that the grantor then intended to place the deed beyond his control, his subsequent inconsistent dealings with the property have no legal effect. However, it is otherwise when the oral instructions which accompany the execution of the deed

leave some doubt as to the true intention of the grantor at the time. In such cases the subsequent conduct and declarations of the grantor claim an important degree of consideration from an evidentiary standpoint, not because the grantor has the right by a change of intention to alter the effect of the previous delivery, but because his subsequent acts and declarations may by reflection shed some light upon his previous intention at the time the deed was delivered. This important bearing of the subsequent acts and declarations of a grantor was overlooked by us in the case of Kay v. Walling, supra, but it was carefully noted by the Court of Appeals of New York in the case of Saltzsieder v. Saltzsieder, 219 N. Y. 523, 114 N. E. 856. Applying the foregoing considerations to the case at bar, we do not find in the oral instructions given by the grantor to the third party at the time of the delivery of the deeds any express statement advising the third party that the grantor relinquished all right to control or withdraw the deeds. But such an intention may be inferred from his direction to hold the deeds until the death of himself and his wife and then deliver them to the grantees therein named. We do not, however, regard this implied direction as sufficiently unequivocal in nature to preclude the consideration of subsequent acts on the part of the grantor for the purpose of determining his actual intent. Six days later the grantor and his wife mortgaged the property and thereby created a lien (since the mortgagee was a subsequent encumbrancer in good faith without notice of the previously executed deeds) against the land which was inconsistent with the title previously purported to have been conveyed by the deeds. However, we believe this circumstance and method of dealing with the property should be considered in the light of the grantor's previously expressed wish that the grantees named in the three deeds should pay his debts in the event of his death. When he made this mortgage he was creating a debt which he expected to be paid by the grantees as a moral, if not a legal, obligation. Legally, when he executed the conveyance, he was dealing in a most irregular manner, if he had previously intended to part with control of the deeds. But he may have justified the act in his own mind and conscience upon the consideration that the grantees were morally obligated to pay his debts and that the imposition of a legal charge against the property, being in accord with the moral obligation, should not be a subject of complaint by the grantees. Under the circumstances, we do not regard this transaction as conclusive evidence that he did not previously intend to part with all control over the deeds.

Subsequently, the grantor, joined by his wife, executed the deed to Forrest B. Anderson. The date of this transaction, as previously noted, was January 16, 1932, or more than a month after the delivery of the deeds to the third party. The record reveals that the grantor's physical condition was then materially impaired and there is evidence indicating an impairment of his mental condition. The trial court, upon consideration of this evidence, found that he was incompetent to execute a valid conveyance. Regardless of the sufficiency of the evidence to establish the mental incompetency of the grantor to execute a valid conveyance on the 16th day of January, we deem it of sufficient weight to destroy the effect of the January conveyance as a reflection of a previous intent on his part at the time of delivery of the three deeds to the third party to retain control over those deeds in the hands of the third party.

The trial court by its decision determined that the grantor at the time the three deeds were delivered to the notary public intended to part forever with the lawful right and power to control, recall, or retake the same. The question was one of fact. The evidence is not conclusive either way. After a consideration of the matter, we are unable to say that the trial court's decision on this question of fact was against the clear weight of the evidence. Our judgment must, therefore, be one of affirmance. The grantee in the deed of January 16th was a donee and not a purchaser and cannot, therefore, prevail on the theory that he had no knowledge of the previous conveyance. Our conclusion as above set forth renders it unnecessary for us to decide the sufficiency of the evidence to support the view that Peter Fisher was mentally incompetent to execute a valid conveyance on January 16, 1932. The judgment is affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS, GIBSON, and HURST, JJ., concur. CORN, J., dissents. OSBORN, C. J., and WELCH, J., absent.